**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:25-CV-00087-KDB-DCK**

| | |
|---|---|
| CHRIS COMISKEY and VICTORIA COMISKEY, | |
| *Plaintiffs*, | **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT VILLAGE OF MARVIN'S MOTION TO DISMISS** |
| v. | |
| VILLAGE OF MARVIN and KIM VANDENBERG, | |
| *Defendants*. | |

NOW COME Plaintiffs, respectfully submitting their Memorandum of Law in Opposition to Defendant Village of Marvin's Motion to Dismiss.

<u>**FACTUAL BACKGROUND**</u>

Plaintiffs are residents and homeowners in the Marvin Creek subdivision in the Village of Marvin ("VOM"), an incorporated municipality in Union County, North Carolina. Compl. ¶¶ 1-3, 6-7. Defendant Kim Vandenberg ("Ms. Vandenberg") is the Mayor Pro Tempore of VOM. *Id.* at ¶ 5. In late 2023, the Marvin Creek homeowners association (the "HOA") purported to grant an easement (the "Easement") to VOM for the purpose of constructing a public trail (the "Public Trail Project") through the woods next to Plaintiffs' home, on property which is owned by the HOA (the "HOA Private Property"). *Id.* at ¶¶ 15-16, 134.

Plaintiffs, along with a plethora of their neighbors, have vehemently opposed the legality of the Easement and of the Public Trail Project. *See, e.g., id.* at ¶ 19. In response to Plaintiffs' vocal objections to the legality of the Easement, Plaintiffs allege that Defendants have engaged

in concerted and joint efforts to suppress Plaintiffs' dissent and to retaliate against them. *Id.* at ¶ 21.

Plaintiffs initially filed this action against Defendants in the courts of Union County, North Carolina (the "State Court") on January 24, 2025. ECF 1, p. 1. On February 5, 2025, Defendants removed the action to this Court. *Id.* On February 6, 2025, this Court remanded Plaintiffs' claims for declaratory and injunctive relief back to the State Court, but retained jurisdiction over Plaintiffs' legal claims pursuant to 28 U.S.C. §§ 1331 and 1367. ECF 2. On February 10, the State Court granted a temporary restraining order in favor of Plaintiffs, enjoining Defendants from construction upon the Easement.[1] On February 27, 2025, VOM filed a motion to dismiss the case in the State Court, and that motion is still pending.

As to the claims which remain before this Court, Plaintiffs allege Defendants have (1) engaged in defamation, (2) intentionally inflicted emotional distress upon Plaintiffs, (3) violated North Carolina's laws regarding transparent governance, and (4) engaged in a conspiracy for the purpose of (5) violating Plaintiffs' rights under the First Amendment of the United States Constitution. Compl., pp. 6-11.

Plaintiffs allege that the covenants, conditions, and restrictions (CCRs) which govern Marvin Creek clearly prohibit the HOA from granting easements for public use, and by extension, grant to each of the homeowners a negative easement right to prevent the dedication of HOA Private Property for public use. *Id.* at ¶¶ 10-13. In February 2024, Plaintiffs notified Defendants that the Easement was invalidly granted by the HOA as such grant violated the CCRs, and as such that the Easement was illegal and void. *Id.* at ¶ 18.

---

[1] The Temporary Restraining Order granted by the State Court on February 10 was memorialized in a written Order dated February 20, 2025, attached hereto as **Exhibit A**.

In the time since Defendants were first notified of Plaintiffs' position on the matter, Plaintiffs allege in detail that Defendants have engaged in a concerted and purposeful campaign to silence opponents of the Public Trail Project by, *inter alia*, abusing governmental powers, violating governmental transparency laws, intimidating Plaintiffs and others using proxies and agents, improperly meddling in HOA affairs and colluding with HOA against Plaintiffs, and directing and/or assisting with defamation per se which was intended to harm Plaintiffs. *See, e.g., id.* at ¶¶ 21, 38, 41, 53, 59, 79, 85.

On March 14, 2025, VOM filed a motion to dismiss Plaintiffs' claims which remain before this Court. ECF 10.

## ARGUMENT

### I.    Defendant VOM's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5) should be denied as moot.

VOM asserts that Plaintiffs' Complaint should be dismissed pursuant to Rules 12(b)(4) and 12(b)(5), alleging that service of process was improper under both Federal and North Carolina Rules 4(j)(2)(B) and 4(j)(5)(a). ECF 12, p. 6. However, Plaintiffs have in fact properly served VOM via the Village Clerk as required by Rule 4(j)(5)(a), and as admitted by VOM in their Brief in Support of Defendant's Motion to Dismiss. ECF 12, p. 7. As a result, VOM's argument that they have not been properly served is moot.

### II.   Defendants cannot invoke governmental immunity as a defense because VOM's immunity has been waived, and because Plaintiffs' claims arise from proprietary functions in supporting Vandenberg's Commercial Connectivity Plan.

The issue of sovereign or governmental immunity is determined with regard to the laws of the state which grant such immunity. *Cannon v. Peck*, 36 F.4th 547, 574 (4th Cir. 2022) ("When addressing pendant [sic] state law claims, '[w]e must look to substantive state law ... in determining the nature and scope of a claimed immunity.'").

3

VOM seeks to avoid liability for their adoption, promotion, and participation in Defendant Vandenberg's scheme to improperly skew community sentiment toward developing commercial properties that connect directly to residents' backyards ("Vandenberg's Commercial Connectivity Development Scheme")—despite those homeowners' objections. The Declaratory Judgement action pending in State court is the underlying and dominant cause of action to this entire case. All bad acts alleged in this federal action derive out of the unlawful acts which the declaratory judgment claim seeks to remedy. The declaratory judgement claim asserts that, as a matter of law, Plaintiffs hold a negative easement right which gives them the individual right to restrict public use on HOA Common Land, notwithstanding anything to the contrary in their CCRs.

### A. VOM has waived its governmental immunity to suit with regard to Plaintiffs' claim for civil conspiracy.

"'In order to overcome a defense of governmental immunity, the complaint must specifically allege a waiver of governmental immunity. Absent such an allegation, the complaint fails to state a cause of action.'" *Wray v. City of Greensboro*, 370 N.C. 41, 47, 802 S.E.2d 894, 899 (2017) (citation omitted). "This requirement does not, however, mandate that a complaint use any particular language. Instead, consistent with the concept of notice pleading, a complaint need only allege facts that, if taken as true, are *sufficient to establish* a waiver ... [of] immunity." *Id.* at 48, 802 S.E.2d at 899 (emphasis in original).

North Carolina provides by statute that a governmental entity which purchases liability insurance waives its governmental immunity with respect to and to the extent of claims which are covered by such insurance. N.C. Gen. Stat. § 160A-485(a), (c).

(a) Any city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance. Participation in a local government risk pool pursuant to Article 23 of General Statute Chapter 58 shall be deemed to be the purchase of insurance for the purposes of this section. Immunity shall be waived only to the extent that the city

4

is indemnified by the insurance contract from tort liability. No formal action other than the purchase of liability insurance shall be required to waive tort immunity, and no city shall be deemed to have waived its tort immunity by any action other than the purchase of liability insurance. …

(c) Any plaintiff may maintain a tort claim against a city insured under this section in any court of competent jurisdiction. As to any such claim, to the extent that the city is insured against such claim pursuant to this section, governmental immunity shall be no defense.

*Id.*

Here, VOM maintains a liability insurance policy which does not expressly exempt claims for civil conspiracy from coverage.[3] As such, because VOM is insured against a claim for civil conspiracy, governmental immunity is no defense per N.C. Gen. Stat. § 160A-485(c). Plaintiffs amended their Complaint in the State Court on March 19, 2025, specifically alleging that Defendants have waived governmental immunity under N.C. Gen. Stat. § 160A-485.[2] Plaintiffs have also filed an Amended Complaint contemporaneously with this Memorandum of Law and have added the same allegation therein.

**B. VOM cannot invoke governmental immunity as a defense because the torts alleged in Plaintiffs' Complaint were committed by VOM while VOM was acting in a proprietary capacity adopting and following Defendant Vandenberg's plan.**

"A municipality and its agents are immune from liability for the torts of its officers and employees 'if the torts are committed while they are performing a governmental function.'" *Clayton v. Branson*, 153 N.C. App. 488, 493, 570 S.E.2d 253, 256–57 (2002). But if a tort was committed while the municipality was engaged in a proprietary function, rather than a governmental one, the doctrine of governmental immunity is inapplicable. *See Tabor v. Cnty. of Orange*, 156 N.C. App. 88, 90, 575 S.E.2d 540, 542 (2003).

---

[2] Plaintiffs' Amended Complaint which was filed in the State Court is attached hereto as **Exhibit B**.

[3] A true and accurate copy of the relevant portions of VOM's insurance policy is attached hereto as **Exhibit C**.

5

"The test for determining whether an activity is governmental or proprietary is 'if the undertaking of the municipality is one in which only a governmental agency could engage, it is governmental in nature. It is proprietary and 'private' when any corporation, individual, or group of individuals could do the same thing.'" *Id.* at 91, 575 S.E.2d at 542.

Here, Plaintiffs allege in detail that the torts—defamation and civil conspiracy, insofar as the latter is viewed for these purposes as a standalone tort—committed by VOM arise from the acquisition of property rights to support a larger commercial development project upon which personal and professional reputations are at stake. Whilst it is true that governments can and sometimes do acquire property rights, in this case, VOM did not limit its conduct to merely acquiring property rights. VOM's concern to protect their reputations resulted in a dogged pursuit of Vandenberg's Commercial Connectivity Plan—is clearly not an undertaking in which only a governmental agency could engage; corporations and individuals likewise often acquire property for similar coordinated development purposes as was done here. As such, the torts alleged by Plaintiffs occurred while VOM was engaging in a proprietary activity, and governmental immunity is thus no bar to Plaintiffs' claims.

VOM cites to an unpublished district court decision for support of their assertion that defamation and civil conspiracy torts *can* be barred by governmental immunity. ECF 12, pp. 7-8 (citing *Kline v. Cleveland Cnty.*, No. 1:19-CV-197-MOC-WCM, 2020 WL 7264463, at *2 (W.D.N.C. Dec. 10, 2020). But VOM's reliance on that case is misguided, as the governmental entity in that case was engaged in the provision of social services, a clearly governmental function—here, VOM was simply acquiring an easement, which is in this case a proprietary action.

6

Given that VOM has waived immunity statutorily regarding Plaintiffs' civil conspiracy claim, and that VOM's defamation arose out of proprietary rather than governmental functions, governmental immunity is no defense to the claims brought by Plaintiffs against VOM.

### C. Plaintiffs have sufficiently stated a claim for defamation against VOM.

"[A] court's role under Rule 12(b)(6) is to evaluate the sufficiency of a complaint and … a court is not permitted at this stage of the proceedings to 'resolve contests surrounding the facts' or 'the merits of a claim.'" *Doriety for Est. of Crenshaw v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024).

### i. Plaintiffs' Complaint plausibly alleges the elements of defamation per se.

VOM asserts that Plaintiffs' allegations as to defamation by VOM are "speculative and conclusory and insufficient." ECF 12, p. 8. VOM also posits that Plaintiffs' "allegations do not bring Plaintiff's claim from plausible to probable and fail to state a claim," citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). ECF 12, p. 9. But VOM here misreads *Iqbal* and apparently contradicts its own understanding of the standard set forth therein; *Iqbal* requires that a claim be merely plausible, meaning that a plaintiff "demonstrate 'more than a sheer possibility'" that the alleged conduct occurred. ECF 12, p. 5 (citing *Iqbal*, 556 U.S. at 678). *Iqbal* is not understood to require that a claim be brought from "plausible" up to "probable" to survive a motion to dismiss. Indeed, that "probable" standard sounds awfully like a preponderance-of-the-evidence standard upon which a verdict may be rendered at trial, and is an incorrect standard to apply at this stage.

Further, Plaintiffs' Complaint is detailed in its allegations that Ms. Vandenberg, in both individual and official capacities, has been engaging in a consistent and arduous pattern of

behavior aimed at quelling dissent against her political goals. Specifically, the Complaint alleges that Mr. Comiskey emailed a settlement offer to VOM; that Ms. Vandenberg almost immediately thereafter prompted an HOA board member to seek that settlement offer via a Freedom of Information Act ("FOIA") request; that one day later Ms. Vandenberg forwarded the settlement offer to her husband; that her husband had been particularly against Plaintiffs; and that on that same day, an anonymous post was made on Facebook (the "Facebook Post") featuring the settlement offer and explicitly accusing Plaintiffs of extortion.

When viewed along with the totality of the allegations painstakingly set forth in Plaintiffs' Complaint, it is more than plausible that Ms. Vandenberg's actions in giving the settlement offer to her husband was intended to result in the Facebook Post that was made only two hours after Mr. Vandenberg received the settlement offer. As such, Plaintiffs' claim that Ms. Vandenberg's actions in acquiring the settlement offer and using it to intentionally cause the defamation of Plaintiffs on behalf of VOM is plausible and thus sufficiently pled.

In any event, Plaintiffs are confident that more concrete evidence as to the connection between Defendants and the creator of the Facebook Post can only be acquired, and would so be acquired, through discovery. It is only after discovery that the factual merits of Plaintiffs' claim can be assessed. *See Doriety*, 109 F.4th at 679. Without discovery, it is not possible to confirm the substance or frequency of communications between parties whose intentions are adverse to Plaintiffs' interests. It is likewise not possible to confirm the identity of the creator of the Facebook Post which constitutes defamation *per se*. Plaintiffs' allegations are plausible and need not be definitive nor "probable" at this stage of the litigation.

### ii. The Facebook Post is clearly an assertion of fact and not a protected opinion.

VOM separately asserts that the Facebook Post constituted inactionable opinion. ECF 12, p. 8. That argument is likewise misplaced.

"In order to recover for defamation, a plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." *Turpin v. Charlotte Latin Sch., Inc.*, 293 N.C. App. 330, 351, 900 S.E.2d 352, 368 (2024), *review on additional issues allowed*, 910 S.E.2d 357 (N.C. 2025). "In an action for libel or slander *per se,* malice and damages are deemed presumed by proof of publication, with no further evidence required as to any resulting injury." *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 30, 568 S.E.2d 893, 898 (2002), *writ denied, review denied, appeal dismissed*, 357 N.C. 163, 580 S.E.2d 361 (2003).

"In North Carolina, a publication is libelous per se 'when considered alone without innuendo, colloquium or explanatory circumstances[, it]: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace.'" *Cannon v. Peck*, 36 F.4th 547, 561 (4th Cir. 2022) (quoting *Renwick v. News & Observer Pub. Co.*, 310 N.C. 312, 317, 312 S.E.2d 405, 409 (1984)). "'A crime is 'infamous' … if it is an act of depravity, involves moral turpitude, and reveals a heart devoid of social duty and a mind fatally bent on mischief...'" *State v. Glidden*, 317 N.C. 557, 560, 346 S.E.2d 470, 472 (1986) (citation omitted).

As to "opinion" as a defense, "[t]he First Amendment does not require a separate 'opinion' privilege limiting the application of state defamation laws." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 1 (1990). "Even if the speaker states the facts upon which he bases his opinion, if

9

those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications." *Id.* at 18–19.

"As a general rule, liability of a principal for the torts of its agent may arise in three situations: (1) when the agent's act is expressly authorized by the principal; (2) when the agent's act is committed within the scope of his employment and in furtherance of the principal's business[;] or (3) when the agent's act is ratified by the principal." *Matthews v. Food Lion, LLC*, 205 N.C. App. 279, 281-82, 695 S.E.2d 828, 830 (2010).

Here, the Facebook Post purports to notify readers of "an individual attempting to use litigation to extort money" from VOM, referencing a screenshot of the settlement offer which features Plaintiffs' name on it.[4] It cannot seriously be questioned that extortion is a crime of depravity and of moral turpitude, and one which would typically subject the accused to ridicule, contempt, or disgrace. VOM contends, somehow, that accusing a person of extortion, a Class F felony under N.C. Gen. Stat. § 14.118.4, is "not defamatory," but VOM makes no argument to support that outlandish notion. See ECF 12, p. 9. VOM then argues that the Facebook Post "does not state facts about Plaintiffs," but only criticizes their actions. This is a blatant misreading of the Facebook Post; the statement does not accuse Plaintiffs merely of doing something dishonest or unscrupulous , it accuses them of unjustifiably demanding compensation and thereby committing a felony.

---

[4] A true and accurate copy of the Facebook Post is attached hereto as **<u>Exhibit D</u>**.

As such, Plaintiffs have alleged that (a) the Facebook Post featured the settlement offer which had just been privately sent to the VOM Council and attorney; (b) Ms. Vandenberg shared the settlement offer with her husband, who then shared it with somebody else; (c) Ms. Vandenberg directed an HOA board member to obtain the settlement offer almost immediately after it was obtained by VOM; (d) less than two hours after Ms. Vandenberg shared the offer with her husband, a Facebook Post was published anonymously which identified Plaintiffs and expressly accused them of a felony, constituting libel per se. The only aspect of the claim which has not already been proven at this stage is precisely who made the statement, and whether Ms. Vandenberg either did so herself or actively told the publisher of the statement to do it. To establish this last fact, discovery is both necessary and appropriate.

VOM contends that Plaintiffs' defamation claim fails because the "Marvin Messenger" post is merely opinion. However, Plaintiffs have clearly alleged that the post contains false and injurious factual assertions regarding Plaintiffs' conduct in defending their home and the settlement offer they extended—assertions that are inherently tied to their negative easement right. This erroneous conclusion drawn by VOM is refuted by the express "notwithstanding" clause in the Marvin Creek CCRs at Article 3, § 1. As a matter of law, this clause confers a negative easement right that bars any public use of the HOA Private Property, and Plaintiffs' reliance on it is fully justified.

Plaintiffs have stated a plausible claim for defamation per se as against VOM, as Plaintiffs allege that Ms. Vandenberg, while acting as if under the authority of an official of VOM, acted far outside of the scope of her authority as an official of VOM by utilizing VOM's access to the settlement offer to intentionally cause Plaintiffs to be publicly accused of extortion and an unjustified defense of their property rights. VOM has continually refused to disavow the

11

Facebook Post, and has otherwise continued to adopt and ratify Ms. Vandenberg's pattern of actions in knowingly retaliating against Plaintiffs as alleged in the Complaint, including causing the Facebook Post to be published against them.

Lastly, VOM argues that "any defamation claim by Ms. Comiskey must be dismissed as the Facebook post does not identify her in any capacity." ECF 12, p. 11. The Facebook Post clearly references "the Comiskey family," thus VOM's assertion is simply untrue.

### III. Plaintiffs have sufficiently stated a claim for statutory violations under North Carolina's Open Governance laws.

#### A. Plaintiffs have sufficiently pled violations of N.C. Gen. Stat. § 132-1.

VOM next argues that Plaintiffs "fail to allege facts sufficient to show any responses to public records requests were unreasonable." ECF 12, p. 12. VOM posits that Plaintiffs' allegations "fail to provide Defendants" with notice as to the claim they must defend against, *Id.*, seemingly contending that Plaintiffs were expected to list each and every one of the document requests that were and were not responded to by VOM.

"Factual allegations must be enough to raise a right to relief above the speculative level *on the assumption that all of the complaint's allegations are true. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (emphasis added).

VOM once again appears to be moving to dismiss Plaintiffs' claims on the basis that Plaintiffs' have not yet proffered evidence obtainable only via discovery. Plaintiffs have alleged that VOM delayed—at times severely—many document requests, but that VOM responded to a document request by a political ally, whose interests were aimed against Plaintiffs' own, within a single day. It is at least plausible that discovery would lead to more evidence favoring Plaintiffs'

claim, not less. Further, it is VOM itself which has records of all of its requests, and it is VOM that is in the best position to know that it is unreasonable to respond to requests by supporters of VOM's political agendas much faster than to requests by vocal opponents.

**B. VOM's public reliance upon the legal opinion of their attorney constitutes a waiver of attorney-client privilege.**

"Evidentiary privileges in litigation are not favored, and even those rooted in the Constitution must give way in proper circumstances." *Herbert v. Lando*, 441 U.S. 153, 175, 99 S. Ct. 1635, 1648, 60 L. Ed. 2d 115 (1979). Attorney-client privilege applies "only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998).

"The burden is on the proponent of the attorney-client privilege" to prove its applicability as well as its non-waiver of the privilege. *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982). "Any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter." *Id.*

Where a governmental entity discloses substantive aspects of their attorney's advice, attorney-client privilege may be waived. *See, e.g., Chase v. City of Portsmouth*, 236 F.R.D. 263, 268 (E.D. Va. 2006) (holding that attorney-client privilege was waived by the city when a councilmember cited a letter from their attorney at a public meeting); *United States v. Cohn*, 303 F. Supp. 2d 672, 679 (D. Md. 2003) ("To the extent that Four Star may have met its burden of proving … attorney-client privilege, it clearly waived the privilege … when it voluntarily disclosed communications to the grand jury ….").

In *Multimedia Publishing of North Carolina, Inc. v. Henderson County*, 145 N.C. App. 365, 550 S.E.2d 846 (N.C. App. 2001), the Court addressed the issue of whether confidential legal advice provided in a closed session retains its protected status when its conclusions are cited in a public setting. The Court held that when a legislative body references the conclusions of confidential legal advice in a public session—and relies on that advice as the basis for a vote—the privilege protecting the confidential discussion is waived. *Id.* at 374, 550 S.E.2d at 852.

In other words, once the confidential legal advice is "brought out" into the public record by its citation and subsequent reliance in a public decision, the protection of attorney-client privilege no longer protects that information.

Defendants, however, have chosen to rely on *Multimedia* in a fragmented manner. Their arguments acknowledge only the initial discussion of attorney-client privilege, while conspicuously omitting the subsequent holding that the confidential legal advice loses its protection when cited and relied upon for public decision-making. Defendants fail to embrace *Multimedia*'s full implication—that public reliance on the confidential legal advice, as evidenced

14

by the legislative vote, automatically constitutes a waiver of attorney-client privilege. Thus, VOM's failure to acknowledge this core holding of *Multimedia* misrepresents the law and is indicative of bad faith.

The doctrine of secret lawmaking exists precisely to balance the need for confidential legal advice in closed sessions with the public's right to transparency in legislative decisions. Confidential discussions are protected to ensure candor; however, when such discussions are referenced in public and used as a basis for action, the public's right to know prevails. By failing to acknowledge that the public vote—in reliance on the confidential advice's conclusion—triggers a complete waiver of attorney-client privilege, Defendants mislead the Court.

Here, VOM has not carried its burden of proving that the legal opinion provided by their attorney as to the legality of the Easement (the "Legal Opinion") was privileged, nor that it such privilege has not been waived. Insofar as Defendants have already relied upon the Legal Opinion in publicly defending their actions in continuing to pursue the Public Trail Project, they may not now use privilege as both a sword and a shield by claiming that the advice upon which they relied is privileged.

Finally, VOM's citation to N.C. Gen. Stat. § 143-318.11(a)(3) for the proposition that it grants a privilege of any kind is misplaced, as that statute merely outlines for what purposes a meeting may be closed to the public.

## IV. Plaintiffs sufficiently point to an unconstitutional policy or custom to state a claim under 42 U.S.C. § 1983.

With regard to the Fifth and Sixth causes of action in Plaintiffs' Complaint regarding VOM's violations of Plaintiffs' First Amendment rights, "it is well settled that a municipal entity

15

has no claim to immunity in a section 1983 suit." *Moore v. City of Creedmoor*, 345 N.C. 356, 366, 481 S.E.2d 14, 21 (1997).

"For purposes of [42 U.S.C.] Section 1983, a municipality is considered a "person" and thus is subject to suit." *Hunter v. Town of Mocksville, N. Carolina*, 897 F.3d 538, 553 (4th Cir. 2018) (citing *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690 (1978)). "Although municipal liability under Section 1983 attaches only to 'action [taken] pursuant to official municipal policy of some nature,' … 'it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.'" *Hunter v. Town of Mocksville, N. Carolina*, 897 F.3d 538, 554 (4th Cir. 2018) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 477 (1986)).

"While municipal 'policy' is found most obviously in municipal ordinances, regulations and the like which directly command or authorize constitutional violations, … it may also be found in formal or informal *ad hoc* 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy." *Spell v. McDaniel*, 824 F.2d 1380, 1385–86 (4th Cir. 1987) (citing *Pembaur* to highlight that a single decision may constitute a policy).

VOM argues that "Plaintiffs Complaint is devoid of allegations of any policies, customs, or practices resulting in violations of Plaintiffs' First Amendment rights under the Constitution." ECF 12, p. 15. But Plaintiffs point to far more than one decision and instance in which VOM and Ms. Vandenberg took action to stymie and retaliate against Plaintiffs' exercise of their First Amendment rights. Plaintiffs' Complaint alleges all throughout that Defendants have engaged in systematic and broad activities with precisely that goal. For example, Plaintiffs have alleged that Defendants have (a) misused law enforcement officers in order to intimidate opponents of

VOM's political agenda; (b) improperly meddled with private HOA matters; (c) colluded with HOA board members to silence Plaintiffs; (d) falsely claimed that nobody had challenged the legality of their actions; and (e) caused Plaintiffs to be vitriolically defamed online. Plaintiffs have thus properly alleged that Defendants' concerted and consistent actions amount to a policy or custom of stifling lawful opposition to the Public Trail Project utilizing nearly any means necessary. Defendants' actions have gone astronomically far beyond merely contesting the merits of Plaintiffs' speech.

Defendants' actions go far beyond a mere contest of the merits of Plaintiffs' speech. They have created a climate of intimidation and retaliation by using both formal and informal means to silence dissent. As explained in *Hunter*, the fact that a municipality is subject to suit under § 1983 does not depend solely on the existence of a formal municipal policy but also on the cumulative impact of actions taken by officials. 897 F.3d at 553. Here, Plaintiffs have sufficiently pled that VOM's conduct, taken as a whole, constitutes a deliberate policy or custom designed to stifle free speech and retaliate against dissenting views.

Because Plaintiffs have articulated a coherent and fact-based narrative that demonstrates a systematic effort by Defendants to chill free speech and defame Plaintiffs, Plaintiffs have met their burden of stating a claim for First Amendment violations under 42 U.S.C. § 1983. The case law is clear that where a municipality engages in actions calculated to suppress constitutional rights, it may be held liable even if only a single decision (or a series of related decisions) is involved. *See Monell*, 436 U.S. at 690; *Spell*, 824 F.2d at 1385–86.

Additionally, Plaintiffs' allegations regarding the civil conspiracy to violate their First Amendment rights are similarly supported. Plaintiffs allege that Defendants conspired—through coordinated actions and deliberate omissions—to prevent Plaintiffs from voicing opposition to

the Easement and the Public Trail Project. These allegations clearly state that Defendants communicated and acted jointly in furtherance of a plan designed to chill Plaintiffs' constitutional rights. As required under § 1983 civil conspiracy jurisprudence, *see Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996), Plaintiffs have sufficiently alleged that Defendants' coordinated actions have resulted in a deprivation of their First Amendment rights.

Because Plaintiffs sufficiently point to a policy or custom which is reasonably calculated to prevent Plaintiffs from voicing legal and political opposition to the Easement and the Trail Project, Plaintiffs have stated a viable claim under 42 U.S.C. § 1983.

### V.  Plaintiffs' civil conspiracy claim is not barred insofar as Plaintiffs allege that Defendants have conspired with nongovernmental parties.

Finally, VOM contends that Plaintiffs' § 1983 civil conspiracy claim is barred by the intracorporate conspiracy doctrine.

Defendant is correct that there is no unlawful conspiracy when officers within a single corporate entity consult among themselves and then adopt a policy for the entity. *See Copperweld Corp v. Independence Tube Corp.,* 467 U.S. 752, 769–771 (1984). Under intracorporate-conspiracy doctrine, an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy. *Id.* However, where the agents are acting beyond the scope of their official capacities, Plaintiffs maintain that it is clearly outside of the scope of a local government official's official duties to: (a) adopt or participate in a scheme which actively seeks to target citizen's clear private property rights (for the purpose of protecting the officials' own political reputations); and (b) suppress the free speech rights of citizens who oppose the officials' scheme through acts aimed to encourage and/or cover-up acts of defamation per se against those same citizens by the local government and its agents.

18

## VI. CONCLUSION

For the foregoing reasons, VOM's Motion to Dismiss should be denied on all grounds.

Respectfully submitted,

This the 28th day of March, 2025.

**TLG LAW**

/s/ Benjamin J. Axelman
Benjamin J. Axelman
David G. Redding
2907 Providence Rd. #303
Charlotte, NC 28211
baxelman@tlg-law.com
dredding@tlg-law.com
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

This is to certify that the undersigned has this day electronically filed the foregoing

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT**

**VILLAGE OF MARVIN'S MOTION TO DISMISS** with the Clerk of Court using the

CM/ECF system serving the same on all parties as follows:

> CRANFILL SUMNER LLP
> Jake W. Stewart
> P.O. Box 30787
> Charlotte, NC 28230
> Telephone (704) 332-8300
> Facsimile (704) 332-9994
> jstewart@cshlaw.com
> *Attorney for Defendants*

This the 28th day of March, 2025.

**TLG LAW**

 /s/ Benjamin J. Axelman
Benjamin J. Axelman

20

## CERTIFICATION REGARDING USE OF ARTIFICIAL INTELLIGENCE

Pursuant to the June 18, 2024 Standing Order of this Court In Re: Use of Artificial Intelligence, 3:24-mc-104, counsel, by signing below, submits the following certification regarding PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT VILLAGE OF MARVIN'S MOTION TO DISMISS.

1. No artificial intelligence was employed in doing the research for the preparation of the Brief, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and

2. Every statement and every citation to an authority contained in the Brief has been checked by an attorney in this case as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 28th day of March, 2025.

**TLG LAW**

_____
Benjamin J. Axelman
David G. Redding
2907 Providence Rd. #303
Charlotte, NC 28211
baxelman@tlg-law.com
dredding@tlg-law.com
*Attorneys for Plaintiffs*

21