# EXHIBIT C

THIS POLICY PROVIDES CLAIMS-MADE COVERAGE.
PLEASE READ THE ENTIRE FORM CAREFULLY.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Interlocal Risk Financing Fund of North Carolina, hereinafter called IRFFNC.

The word "insured" means any person or organization qualifying as such under SECTION II - WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION VI - DEFINITIONS.

**I. SECTION I – PUBLIC OFFICIALS LIABILITY COVERAGE**

**1. Insuring Agreement.**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages resulting from "claims", to which this insurance applies, against the insured by reason of "public official(s) wrongful act(s)" rendered in discharging duties on behalf of the public entity named in the Declarations. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS. This insurance does not apply to "public official(s) wrongful act(s)" which occurred in whole or in part prior to the Retroactive Date or which occur after the policy period . If no retroactive date is shown in the declarations, the retroactive date will be the effective date of this coverage part. We may, at our discretion, investigate and settle any "claim" or "suit". We will have the right and duty to defend any "suit" seeking those damages. But:

   (1) The amount we will pay for damages is limited as described in SECTION III - LIMITS OF INSURANCE; and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

   b. This insurance applies only if a "claim" for damages because of the "public official(s) wrongful act(s)" is first made against any insured during the policy period .

   (1) A "claim" by a person or organization seeking damages will be deemed to have been made when notice of such "claim" is received and recorded by any insured or by us, whichever comes first.

   (2) All "claims" for damages resulting from or involving the same "public official(s) wrongful act(s)" or one "public official(s) wrongful act(s)" will be deemed to have been made at the time the first of those "claims" is made against any insured.

   (3) All "claims" based on or arising out of the same or related "public official(s) wrongful act(s)" or offenses by one or more insureds shall be considered first made when the first of such "claims" is made. Related "public official(s) wrongful act(s)" means two or more wrongful acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause, or series of related facts, circumstances, situations, events, transactions, or causes.

# IRFFNC PUBLIC OFFICIALS LIABILITY COVERAGE FORM

2. **Exclusions.**

   This insurance does not apply to any "claim" made against the insured:

   a. Based upon or attributable to the insured gaining any profit, advantage or remuneration to which the insured is not entitled.

   b. Which are brought or contributed to in fact by any dishonest or by fraudulent act or omission or any criminal act or omission of the insured.

   c. For any damage arising out of the willful violation of any federal, state, or local statute, ordinance, rule or regulation committed by or with the knowledge and consent of any insured. Nor shall we have any obligation to indemnify the insured for any loss, cost, civil fine, penalty or expense against any insured arising from any complaint or enforcement action from any federal, state or local governmental regulatory agency.

   d. For any damage arising from "bodily injury", "property damage", including diminution of value or loss of use, "personal and advertising injury", or acts committed in the "administration" of your "employee benefit program."

   e. Any "claim" or "suit" seeking punitive or exemplary damages. If a "suit" shall have been brought against the insured for a "claim" falling within the coverage provided by this policy, seeking both compensatory and punitive or exemplary damages, we will afford a defense to such action, but we shall not have an obligation to pay for any cost, interest, or damages attributed to punitive or exemplary damages.

   f. For false arrest, false imprisonment, libel, slander, defamation, invasion of privacy, wrongful eviction, assault, battery, malicious prosecution, or abuse of process by any insured.

   g. Arising out of the activities of any law enforcement agency or law enforcement personnel, including the operation of adult and juvenile detention facilities.

   h. As a result of strikes, riots or civil commotion.

   i. For which the insured is entitled to indemnity or payment by reason of having given notice of any circumstances which might give rise to a "claim" under any policy or policies the term of which has expired prior to the inception date of this policy.

   j. Arising out of any insured's (1) obligations under the Employee Retirement Income Security Act of 1974 (ERISA), including subsequent amendments or any similar federal, state or local law or regulation; or (2) administration of any employee benefit plan or self-insurance fund.

   k. For "claims" or "suits" seeking relief or redress in any form other than compensatory damages. Nor shall we have any obligation to indemnify the insured for any costs, fees including attorneys fees, or expenses which the insured shall become obligated to pay as a result of an adverse judgment for injunctive or declaratory relief; however, we will afford defense to the insured for such "claims" or "suits", if not otherwise excluded, where compensatory damages are requested. However, IRFFNC will afford defense to the insured for such "claims" as provided in Section I - Supplementary Payments.

   l. For any damages arising out of or in any way connected with the operation of the principles of eminent domain, adverse possession, dedication by adverse use, inverse condemnation or condemnation proceedings, by whatever name used.

   m. Directly or indirectly arising out of (1) any debt financing, including but not limited to bonds, notes, debentures and guaranties of debt; or (2) the formulation of tax rates, the collection of taxes and/or the disbursement of tax refunds; or (3) investment activities under the direction of the Named Insured; or (4) any activity for which the insured is acting in a fiduciary capacity.

n. For "claims" arising from procurement, service, construction, architect, or engineer contracts, including but not limited to the insured's intentional interference with said contracts.

o. Based upon or attributable to any failure or omission of the insured to purchase or maintain insurance of any kind.

p. Arising from a publication or utterance in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the public entity.

q. For any loss, cost, or expense arising, in whole or part, out of any of the following: (1) the actual alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time; or (2) any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or (3) any "claim" or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants. Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

r. For any liability, including all loss, cost, or expense directly or indirectly arising out of, resulting as a consequence of, or related to lead, whether or not there is another cause of loss which may have contributed concurrently or in any sequence to a loss, as described in paragraphs (1) through (4) below:

(1) Any damages arising out of, resulting from, caused by, or contributed to by lead, ingestion, inhalation or absorption of lead in any form, exposure to lead, the use or existence of lead or contact with lead;

(2) Any damages or any loss or expense arising out of any:

(a) "Claim" or "suit" by or on behalf of any governmental authority or any other alleged responsible party because of, or

(b) Request, demand, order or statutory or regulatory requirement that any insured or any other person or entity should be, or should be responsible for:

(i) Assessing the presence, absence or amount or effects of lead;

(ii) Identifying, sampling or testing for, detecting, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, abating, disposing of or mitigating lead; or

(iii) Responding to lead in any way other than as described in r.(2)(b)(i) and r.(2)(b)(ii) above.

(3) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with any of the subsections above; or

(4) Any obligation to share damages with or repay someone else in connection with any of the subsections above.

s. For any loss, cost or expense arising, in whole or part, out of any of the following: (1) any cost or expense arising out of, resulting from, caused or contributed to by electromagnetic fields, provided that such injury or damage results from or is contributed to by the hazardous properties of electromagnetic fields; (2) the costs of abatement or mitigation of (i) electromagnetic fields or (ii) exposure to electromagnetic fields; (3) any supervision, instructions, recommendations, warning or advice given or which should have been given in connection with parts (1) or (2) above; or (4) any obligation to share damages with or repay someone else who must pay damages in connection with parts (1), (2) or (3) above.

t. For any loss, cost or expense arising out of, resulting from, caused or contributed to by asbestos or exposure to asbestos. This includes, but is not limited to, any costs for abatement, mitigation, removal or disposal of asbestos. This exclusion also includes, but is not limited to: (1) any supervision, instructions, recommendations, requests, warnings or advice given or which should have been given in connection with the above; and (2) any obligation to share damages with or repay someone else who must pay damages.

u. This insurance does not apply to, and we shall not be obligated to make any payment for, any "suit" or "claim" made against any insured arising out of or relating to any alleged or threatened negligence, breach of duty, failure to perform, malfeasance, misfeasance, malpractice, improper conduct, failure to inspect, failure to detect, vicarious liability, respondeat superior, or negligent hiring, training, supervision, retention, or any similar "claim" or "suit" against the insured, or any other alleged duty owed or any alleged failure or breach of any duty, regardless of its nature, type or kind, arising from, arising out of, or relating in any way to any alleged acts or omissions by any type of building inspector, whether it be a commercial, residential, fire or any other type of building inspector, by whatever title or name referred to, regardless of whether the building inspector is or was an employee of the insured, is or was retained by the insured, or is or was serving in the capacity of an independent contractor.

For the limited category of "suits" arising from or "claims" made against an insured based upon alleged unintentional errors, omissions, negligence or breach of duty by an individual who was at all relevant times an employee of an insured acting in the capacity of a building inspector, or based upon alleged vicarious liability, respondeat superior, or negligent hiring, training, supervision, or retention of an employee of an insured acting in the course and scope of his/her capacity as a building inspector, a defense only will be provided for such limited category of "suits" or "claims". However, this paragraph provides only for a defense for such limited category of "suits" or "claims", without indemnification for any judgment which might be entered against an insured or its building inspector and without indemnification for any settlement which might be entered into by or on behalf of an insured or its building inspector.

Even where a defense is provided by IRFFNC for the limited category of "suits" or "claims" made against an insured based upon alleged unintentional errors, omissions, negligence or breach of duty by an individual who was at all relevant times an employee of an insured acting in the capacity of a building inspector, there is no coverage provided by IRFFNC for any such "suit" or "claim", and there is no duty by IRFFNC to provide any indemnification for any judgment which might be entered against an insured or its building inspector or for any settlement which might be entered into by or on behalf of an insured or its building inspector arising from, arising out of, or relating in any way to any alleged acts or omissions by any type of building inspector.

v. Sexual Acts

For any "claims" or "suits" arising from or relating in any way to any alleged acts of sexual assault, sexual battery, sexual abuse, rape, molestation, or any other sexual acts of any nature, kind or description, by whatever name used, by any employee, agent, officer, director, official, board member, commissioner, or representative of the Named Insured public entity shown in the Declarations.

For the limited category of "claims" or "suits" against the Named Insured public entity shown in the Declarations itself for any alleged vicarious liability, respondeat superior, or negligent hiring, training, or supervision arising from or relating in any way to any unexpected, unintended, and unanticipated loss, damage or injury arising from or relating in any way to any alleged acts of sexual assault, sexual battery, sexual abuse, rape, molestation, or any other sexual acts of any nature, kind or description, by whatever name used, **a defense only will be provided for the Named Insured public entity shown in the Declarations itself, but without providing any coverage or indemnification** for any "claims", "suits", judgments or settlements which might be

entered against, into, by or on behalf of the Named Insured public entity shown in the Declarations or any employee, agent, officer, director, official, board member, commissioner, or representative of the Named Insured public entity shown in the Declarations.

w. Financial and Legal Counseling

Arising out of rendering or failure to render any financial, credit, or legal counseling of any kind to anyone other than the Named Insured.

x. For any damages arising out of the providing of, or failure to provide, professional services by any member of the medical profession

y. For any "claims" or "suits" for damages arising out of activities performed by any attorney at law, architect, engineer or accountant within the scope of their professional duties as such. However, this exclusion does not apply to the above professionals for damages claimed for any losses, costs or expenses arising out of their duties as a public official or as an employee of the insured, but only if such allegations are not otherwise excluded from coverage.

z. Arising out of the complete or partial failure of any insured to supply gas, oil, water, electric, steam or sewer utilities or services.

aa. (1) For any liability, loss, injury or damage which would not have occurred or taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on, in, upon, or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such liability, loss, injury, damage, cost or expense.

(2) For any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

bb. For "claims" or "suits" for damages arising out of the bursting, breach, failure or structural defect of any dam, water reservoir, dike or levee.

cc. For any "claims" or "suits" for damages arising out of any "public official(s) wrongful act":

(1) With respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability, or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which

(a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or

(b) The insured is, or had this policy not been issued would be, entitled to indemnity from **the United States of America, or any agency thereof, under any agreement entered into** by the United States of America, or any agency thereof, with any person or organization.

(3) Resulting from the "hazardous properties" of "nuclear material," if:

(a) The "nuclear material":

(i) is at any "nuclear facility" owned by or operated by or on behalf of an insured or

(ii) has been discharged or dispersed therefrom:

PQL-02 (07/2019)    Page 5 of 15
Case 3:25-cv-00087-KDB-DCK    Document 13-3    Filed 03/28/25    Page 5 of 15

    (b) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, possessed, stored, transported or disposed of by or on behalf of an insured; or

    (c) The "public official(s) wrongful act(s)" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"

The following terms apply only to this exclusion:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material," "special nuclear material" or "byproduct material".

"Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material:

    (1) containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and

    (2) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

    (1) Any "nuclear reactor";

    (2) Any equipment or device designed or used for

        (a) separating the isotopes or uranium or plutonium,

        (b) processing or utilizing "spent fuel," or

        (c) handling, processing or packaging "waste";

    (3) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof of more than 250 grams of uranium 235,

    (4) Any structure, basis, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

  dd. (1) For any damages arising out of any actual or alleged "employment wrongful act(s)":

    (2) For any damages to the spouse, child, parent, brother or sister of that person as a consequence of an "employment wrongful act(s)" to that person at whom any of the "employment wrongful act(s)" is directed.

   This exclusion applies:

   (1) Whether the "employment wrongful act(s)" occurs before employment, during employment or after employment of that person;

   (2) Whether the insured may be liable as an employer or in any other capacity; and

   (3) To any obligation to share damages with or repay someone else who must pay damages because of the "employment wrongful act(s)".

ee. (1) For any "public official(s) wrongful act(s)" or offense which takes place prior to the policy period of the coverage part if the insured had knowledge of circumstances which could reasonably be expected to give rise to a "claim"; or

   (2) For any loss for which the insured is entitled to indemnity or payment by reason of having given notice of any circumstances which might give rise to a "claim" under any policy or policies the term of which has expired prior to the inception date of the policy.

ff. For any damages which result from a wrongful act committed intentionally with knowledge of wrong-doing; however, the Fund will provide a defense to the Named Insured for "suits" containing such allegations, but only if such allegations are not otherwise excluded from coverage.

gg. Any "claim" made by, on behalf of, or for the benefit of the Named Insured against any other insured.

hh. For any "claim" or "suit" against the insured, due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond, arising directly or indirectly out of:

   Any actual or alleged failure, malfunction or inadequacy of:

   (1) Any of the following, whether belonging to any insured or to others:

   (a) Computer hardware, including microprocessors;

   (b) Computer application software;

   (c) Computer operating systems and related software;

   (d) Computer networks;

   (e) Microprocessors (computer chips) not part of any computer system; or

   (f) Any other computerized or electronic equipment or components; or

   (2) Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed above in this endorsement.

   Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described above.

ii. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability

   For any damages arising out of:

   (1) Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

   (2) The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

      This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph (1) or (2) above.

      As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

  jj. Recording And Distribution Of Material Or Information In Violation Of Law

      For any damages arising directly or indirectly out of any action or omission that violates or is alleged to violate:

      (1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

      (2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

      (3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

      (4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

  kk. For any damages arising out of the ownership, maintenance, use or entrustment to others of any aircraft, including "unmanned aircraft".

**SUPPLEMENTARY PAYMENTS**

We will pay, with respect to any "claim" or "suit" we defend:

1. All expenses we incur.
2. The cost of bonds to release attachments and appeal bonds required in any "suit" we defend, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.
3. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the "claim" or "suit", including actual loss of earnings up to $100 a day because of time off from work. Such expenses, do not include salaries of officials or employees of the public entity.
4. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.
5. Pre-judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer.
6. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

**These payments under #1 through #6 will not reduce the Limits of Insurance.**

# IRFFNC PUBLIC OFFICIALS LIABILITY COVERAGE FORM

**SECTION II - WHO IS AN INSURED**

Each of the following is an insured:

    a. The public entity named in the Declarations.

    b. Your lawfully elected, appointed or employed officials, past, present and future, but only for acts within the course and scope of their duties.

    c. Your lawfully appointed members of the commissions, boards or other units operated and controlled by you that are under your jurisdiction and within an allocation of your total operating budget, but only with respect to their duties as your lawfully appointed member. However, none of the above are insureds with respect to operations involving schools, hospitals, nursing homes, port authorities, or gas utility companies.

    d. Your employees, but only for their acts in the course and scope of their employment.

    e. Any person providing volunteer services for you at your request and operating under your direction and control.

    f. Any person providing services for you under mutual aid or similar agreements.

    g. The estates, heirs, legal representatives or assigns of deceased persons who were insureds at the time of the "public official(s) wrongful act(s)" upon which a "claim" is based, but only to the extent that they would otherwise be provided coverage under this Coverage Form.

    h. The legal representatives or assigns of the Named Insured in the event of the Named Insured's incompetency, insolvency or bankruptcy, but only for the legal representatives' or assigns' acts in the course and scope of their representation on behalf of the Named Insured.

**SECTION III - LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a. Insureds;

    b. "Claims" made or "suits" brought; or

    c. Persons or organizations making "claims" or bringing "suits".

2. The Annual Aggregate Limit is the most we will pay for all damages.

3. Subject to 2. above, the Each Claim Limit is the most we will pay for all loss arising out of any "public official(s) wrongful act(s)" covered by this policy. "Claims" based on and arising out of the same act or related acts of one or more insureds shall be considered to be a single "claim".

The Limits of Insurance of this coverage part applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for the purposes of determining the Limits of Insurance.

**SECTION IV - PUBLIC OFFICIALS LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's successor will not relieve us of our obligations under this policy.

**2. Duties In The Event of Potential or Actual "Claim" or "Suit"**

a. You must see to it that we are notified as soon as practicable after you become aware of any situation or circumstances which may result in a "claim" being made against you alleging a "public official(s) wrongful act(s)". To the extent possible, notice should include:

   (1) A description of the situation or circumstances, including how, when and where it occurred;

   (2) The names and addresses of any involved persons and witnesses; and

   (3) The nature and extent of any damage arising or likely to arise out of the situation or circumstances.

b. If a "claim" is received by any insured you must:

   (1) Immediately record the specifics of the "claim" and the date received; and

   (2) Notify us, in writing, immediately.

c. You and any other insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit",

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation, settlement or defense of the "claim" or "suit", and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us under this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

a. The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of our liability under this policy shall not be reduced by the existence of such other insurance.

When this insurance is excess, we will have no duty to defend any "claim" or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

      (1)  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

      (2)  The total of all deductible and self-insured amounts under all such other insurance.

  b.  When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, we shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable Method of Sharing provision below:

Method of Sharing:

    (1)  If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this method each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

    (2)  If any of the other insurance does not permit contribution by equal shares, we will contribute by equal limits.  Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limits of Insurance of all insurers.

**5.  Representations**

By accepting this policy, you agree that:

a. The Application for insurance completed in solicitation of this insurance is made a part of this policy as though set forth in full herein;

b. The statements in the Declarations and Application for insurance are accurate and complete;

c. Those statements are based upon representations you made to us; and

d. We have issued this policy in reliance upon your representations.

**6.  Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

  a. As if each Named Insured were the only Named Insured; and

  b. Separately to each insured against whom "claim" is made or "suit" is brought.

**7.  Transfer Of Rights Of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us.  The insured must do nothing after loss to impair them.  At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**8.  Deductible**

a. Our obligation under Section I of this policy to pay damages on behalf of the insured applies only to the amount of damages in excess of any deductible amount stated in the Declarations.

b. The deductible amount stated in the Declarations, if any, applies to all damages sustained by any person or organization as the result of any one "claim".  "Claims" based on or arising out of the same act or related acts of one or more insureds shall be considered a single "claim".

c. The deductible amount stated in the Declarations applies to each "claim" and includes loss payments and adjustment, investigative and legal fees and costs, whether or not loss payment is involved.

    d. The terms of this insurance, including those with respect to (1) our right and duty to defend any "suits" seeking damages, and (2) your duties in the event of potential or actual "claim" or "suit" apply irrespective of the application of the deductible amount.

    e. We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**9. When We Do Not Renew**

If we decide not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 45 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**10. Cancellation**

    a. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    b. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

        (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        (2) 45 days before the effective date of cancellation if we cancel for any other reason.

    c. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

    d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

    e. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

    f. If notice is mailed, proof of mailing will be sufficient proof of notice.

**11. Changes**

This policy and the application contain all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**12. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to five years afterward.

**13. Premiums**

The first Named Insured shown in the Declarations:

  a. Is responsible for the payment of all premiums; and

  b. Will be the payee for any return premiums we pay.

**14. Transfer of Your Rights and Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**SECTION V - EXTENDED REPORTING PERIODS**

1. We will provide one or more Extended Reporting Periods, as described below, if:
    a. This policy is canceled or not renewed; or
    b. We renew or replace this policy with insurance that:
        (1) Has a Retroactive Date later than the date shown in the Declarations of this policy; or
        (2) Does not apply on a claims-made basis.

2. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy and lasts for sixty days.

    The Basic Extended Reporting Period does not apply to "claims" that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such "claims".

3. A Supplemental Extended Reporting Period of up to three years may be offered by us at our discretion, but only by an endorsement and for an extra charge. This supplemental period starts sixty days after the end of the policy period.

    You must give us a written request for the endorsement within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

    We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

    a. The exposures insured;
    b. Previous types and amounts of insurance;
    c. Limits of Insurance available under this policy for future payment of damages; and
    d. Other related factors.

    This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

4. Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to "claims" arising out of "public official(s) wrongful act(s)" or offenses that occur on or after the retroactive date shown in the declarations and before the end of the policy period.

    "Claims" for such injury or damage which are first received and recorded during the Basic Extended Reporting Period (or during the Supplemental Extended Reporting Period, if it is in effect) will be deemed to have been made on the last day of the policy period.

    Once in effect, Extended Reporting Periods may not be canceled.

5. Extended Reporting Periods do not reinstate or increase the Limits of Insurance applicable to any "claim" to which this policy applies.

**SECTION VI - DEFINITIONS**

1. "Administration" means:

    a. Providing information to employees, including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

    b. Handling records in connection with the "employee benefit program"; or

    c. Effecting, continuing or terminating any employee's participation in any benefit included in the "employee benefit program".

    However, "administration" does not include handling payroll deductions.

2. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    b. Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

3. "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

5. "Claim" means a demand received by the insured for money damages, non monetary damages as provided in the SUPPLEMENTARY PAYMENTS, filing and or service of "suit" papers or arbitration proceedings filed against the insured arising out of "public official(s) wrongful act(s)" to which this insurance applies.

6. "Employee benefit program" means a program providing some or all of the following benefits to employees, whether provided through a "cafeteria plan" or otherwise:

    a. Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an employee may subscribe to such benefits and such benefits are made generally available to those employees who satisfy the plan's eligibility requirements;

    b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an employee may subscribe to such benefits and such benefits are made generally available to all employees who are eligible under the plan for such benefits;

    c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

    d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

    e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

7. "Employment wrongful act(s)" means claims or actions involving or relating to: hiring, training, supervision, retention, refusal to employ, termination, demotion, failure to promote, evaluation, reassignment, retaliatory action, discipline, defamation, harassment, humiliation, libel, slander, invasion of privacy, wrongful eviction, false arrest, false imprisonment, coercion, malicious prosecution, abuse of process, discrimination, and any other employment-related practices, policies, acts, or omissions. "Employment wrongful act(s)"does not include any "public official(s) wrongful act(s)."

8. "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by "fungi".

9. "Personal and advertising injury" means an injury, including consequential "bodily injury," arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement";

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement"; or

   h. Shock humiliation, mental injury and mental anguish.

10. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

11. "Public official(s) wrongful act(s)" means any alleged or actual breach of duty, or violation of any federal, state or local civil rights, by an insured while acting within the scope of his/her duties as a public official for the public entity named in the Declarations. "Public official(s) wrongful act(s)" does not include any "employment wrongful act(s)".

12. "Suit" means a civil proceeding in which damages because of "public official(s) wrongful act(s)" to which this insurance applies are alleged. "Suit" includes an arbitration proceeding or any other alternative dispute resolution proceeding alleging such damages to which you must submit or submit with our consent.

13. "Unmanned aircraft" means an aircraft that is not:

    a. Designed;

    b. Manufactured; or

    c. Modified after manufacture;

    to be controlled directly by a person from within or on the aircraft.