| | |
|---|---|
| CHRIS COMISKEY and VICTORIA COMISKEY, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) **BRIEF IN SUPPORT OF DEFENDANT'S**<br>) **MOTION TO DISMISS**<br>) |
| VILLAGE OF MARVIN and KIM VANDENBERG | )<br>)<br>) |
| Defendants. | )<br>) |

This matter is before the Court on Defendant's, Village of Marvin, (hereinafter "Defendant" or the "Village") Motion to Dismiss pursuant to Rule 12(b)(1), 12(b)(2), 12(b)(4), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure. Defendant, by and through their undersigned counsel of record, respectfully submit this Brief in support of their Motion to Dismiss and respectfully request that their Motion be granted.

## NATURE OF THE CASE

Chris Comiskey and Victoria Comiskey ("Plaintiffs" or "Mr. Comiskey" and "Ms. Comiskey") filed a Complaint against Defendants in Union County Superior Court on January 24, 2025. (D.E. 1-1). A copy of the Summons and Complaint was mailed to the Village of Marvin on January 28, 2025. On February 5, 2025, the Village removed the above-captioned action from state court to the Western District of North Carolina. (D.E. 1). Plaintiffs' Complaint seeks damages, injunctive relief and declaratory relief, and alleges six causes of action: (1) Declaratory Relief against both Defendants; (2) Defamation against both Defendants; (3) Intentional Infliction of Emotional Distress against Defendant Vandenberg; (4) Violation of Open Governance Laws against both Defendants; (5) Violation of First Amendment Rights against both Defendants; and

(6) Civil Conspiracy to Violate Plaintiffs' First Amendment Rights against both Defendants. (D.E. 1-1). On February 6, 2025, this Court issued an Order remanding Plaintiffs' Declaratory Judgment action back to state court. (D.E. 2). The Order also instructed the parties to submit their respective positions as to whether the federal claims should be stayed pending judicial resolution of the claims in state court. (*Id.*). Both parties submitted their respective positions as to a stay. (D.E. 7, 8). On March 28, 2025, Plaintiffs filed an Amended Complaint against both Defendants with the same causes of action, except Plaintiffs are no longer pursuing a defamation claim against the Village. (D.E. 14). To date, Defendant Kim Vandenberg, (hereinafter "Ms. Vandenberg") has not been served with the Federal lawsuit. Defendant now moves to Dismiss Plaintiffs' Amended Complaint as to the remaining causes of action against them.

## STATEMENT OF FACTS

Plaintiffs are husband and wife who live in the Marvin Creek subdivision, located in the Village of Marvin (the "Village"). (D.E. 14 ¶¶ 12-13). In November of 2023, the Marvin Creek HOA purported to grant an easement (the "Easement") to the Village for the purpose of constructing a public trail (the "Public Trail Project"). (*Id.* at ¶¶ 21-22). Plaintiffs allege the HOA covenants, conditions, and restrictions ("CCRs") prohibit the granting of the Easement and that they have the right to restrict such use through their negative easement. (*Id.* at ¶¶ 14, 17-19). In February of 2024, Plaintiffs began to notify both Defendants that the CCRs prohibited the HOA from granting the Easement. (*Id.* at ¶ 24). In response, Plaintiffs allege Ms. Vandenberg, mayor pro tempore, initiated and continued a pattern of behavior and actions calculated to retaliate against and suppress Plaintiffs' objection to the Easement. (*Id.* at ¶ 25).

Specifically, Plaintiffs allege Ms. Vandenberg misused the Union County Sheriff's Office to intimidate and discredit Ms. Comiskey for sharing crime information near trails in February and

March of 2024. (*Id.* at ¶¶ 29-30).  In weeks prior, Ms. Comiskey presented crime data obtained from a Union County Sheriff officer, Detective Trull. (*Id.* at ¶¶ 28-29).  It is alleged Ms. Vandenberg and her associates called upon Union County Sheriff officers to appear at subsequent public meetings to rebut and discredit Ms. Comiskey's reporting. (*Id.* at ¶ 32).  It is specifically alleged Defendants cajoled Union County Sheriff officers to falsely state there is "no evidence" that criminals who committed break-ins used the wooded trail Defendants intend to connect to the Marvin Creek Easement. (*Id.* at ¶ 34).

Plaintiffs allege Ms. Vandenberg engaged in collusion with the HOA when she received an email from Ms. Comiskey containing the names of homeowners within the HOA who opposed the Public Trail Project and shared that email with an HOA board member. (*Id.*, at ¶¶ 39-43).  Plaintiffs allege the email was calculated to assist the HOA board member in thwarting Plaintiffs attempts to stop the Public Trail Project and further Ms. Vandenberg's political agenda. (*Id.* at ¶ 44).

Throughout 2024, Plaintiffs submitted multiple public records requests to the Village related to the Easement and Public Trail Project. (*Id.* at ¶ 45).  Plaintiffs allege the Village has failed to provide many of the requested records they are legally obligated to provide. (*Id.* at ¶ 46).  Plaintiffs allege upon information and belief that Ms. Vandenberg has influenced the Village to prevent Plaintiff from obtaining the public records requested. (*Id.* at ¶ 47).  Specifically, Plaintiffs claim they are entitled to a legal opinion which the Village relied upon in approving the Public Trail Project. (*Id.* at ¶ 48).  Plaintiffs allege the legal opinion is not protected by attorney-client privilege because Ms. Vandenberg cited to the opinion in response to questions about the Trail's legality and the Village relied upon the legal opinion in voting to approve the Public Trail Project. (*Id.* at ¶¶ 49-53).

Mr. Comiskey emailed a settlement offer to the undersigned and the Village Council on October 29, 2024. (*Id.* at ¶ 55). An HOA board member submitted a public records request seeking all emails sent by Mr. Comiskey to the Village between October 28, 2024, and November 1, 2024. (*Id.* at ¶ 57). Plaintiffs contend this request was done at the behest of Ms. Vandenberg and that the Village fulfilled this request in an expedited manner. (*Id.* at ¶¶ 58-59). On November 2, 2024, Ms. Vandenberg forwarded the settlement offer from Mr. Comiskey to her husband, who Plaintiffs allege was publicly criticizing their efforts to stop the Public Trail Project. (*Id.* at ¶ 61). Later that day, Marvin Messenger, a Facebook page, published a portion of the settlement offer and accused Plaintiff of "attempting to use litigation to extort money from the town…" (*Id.* at ¶ 62, and Ex. D). Plaintiffs allege Ms. Vandenberg knew or should have known that forwarding the settlement offer to her husband would result in publication on Facebook and that she forwarded the offer in an attempt to retaliate against Plaintiffs and influence the outcome of the HOA special meeting taking place the following week. (*Id.* at ¶¶ 564-66).

Additionally, Plaintiffs allege that Ms. Vandenburg has orchestrated a campaign to target and harass homeowners who oppose her vision of commercial development and that she has been enforcing an "unwritten VOM policy that "'No' is not an option" (*Id.* at ¶¶ 67-68). Plaintiffs assert that the Defendants' "collective entrenchment in this scheme has driven them to abuse government power, weaponize information, and disregard legal constraints." (*Id.* at ¶¶ 69-70). The Village has communicated with the neighboring Amber Meadows community regarding a proposed public trial, and the Plaintiffs have alleged that such communications have evidenced "retaliatory intent." (*Id.* at ¶ 71). At the public Village Council meeting in December 2024, Council Member Lein discussed the use of eminent domain as to the Public Trail Project. (*Id.* at ¶ 72). The HOA's attorney communicated the Village's conversations of eminent domain to the Marvin Creek HOA,

and Plaintiffs contend that the resistance to granting public use easements was "futile to [the Village's] power to forcibly obtain those easements." (*Id.* at ¶ 73). Lastly, Plaintiffs allege that an HOA board member has recognized that the HOA board has "acted out of fear of retaliation from [the Village]."

## **LEGAL STANDARD**

The Plaintiff bears the burden of proving that subject matter jurisdiction exists. *Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (quotation omitted). Indeed, as explained by this Court:

> The moving party should prevail on a motion to dismiss pursuant to a lack of federal jurisdiction if material jurisdictional facts are not in dispute, and the moving party is entitled to prevail as a matter of law. Moreover, on a factual challenge to the court's subject matter jurisdiction, the Court is not limited to the four corners of the Complaint and is free to weigh evidence and determine its power to hear the case.

*Davis v. Am. Airlines*, No. 3:19-CV-44-MOC-DSC, 2019 WL 2719909, at *3 (W.D.N.C. June 28, 2019) (internal citations and quotations omitted), *aff'd sub nom. Davis v. Am. Airlines, Inc.*, 792 F. App'x 265 (4th Cir. 2020), *cert. denied,* 141 S. Ct. 256, 208 L. Ed. 2d 27 (2020).

Under Federal Rule of Civil Procedure 12(b)(2), Plaintiff bears the burden of establishing proper process and proper service of process. *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 59-60 (4th Cir. 1993). A summons must be issued properly and served before a federal court may exercise personal jurisdiction over a defendant. *Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987). When process or service of process is deficient and personal jurisdiction is lacking, a case must be dismissed under Rule 12(b)(2). *See, e.g., Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984). "Inasmuch as the sufficiency of process and service of

process concern the court's jurisdiction, consideration of materials outside the pleadings, such as affidavits, is appropriate." *N.C. ex rel. Ayers v. Sellers*, No. 2:06-CV-4, 2006 WL 8456119, at *1 (W.D.N.C. Sept. 6, 2006), *report and recommendation adopted*, No. 2:06-CV-4, 2006 WL 3390638 (W.D.N.C. Nov. 22, 2006) (citation omitted).

In order to survive a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, Plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Further, a claim must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556-557).

The courts do not accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Doe v. U.S.*, 381 F. Supp. 3d 573, 590 (M.D.N.C. 2019) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). While the Court accepts plausible factual allegations in the complaint as true and considers those facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F. 3d 175, 180 (4th Cir. 2000). A court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted).

"Even though matters outside the pleadings are generally not considered on a Rule 12(b)(6) motion," *see* Fed. R. Civ. P. 12(d); *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare,*

*Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), "the court can consider 'documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice' without converting a motion to dismiss into one for summary judgment." *Shore v. Charlotte-Mecklenburg Hosp. Auth.*, 412 F. Supp. 3d 568, 573 (M.D.N.C. 2019) (quoting *Plymouth Cty. Ret. Ass'n v. Primo Water Corp.*, 966 F. Supp. 2d 525, 536 (M.D.N.C. 2013)).

## LEGAL ARGUMENT

### I. Plaintiffs have Failed to State a Claim for Violation of Open Governance Laws.

Plaintiffs allege Defendants violated open governance laws by violating N.C.G.S. §§ 143-318.9 et seq. and N.C.G.S. §§ 132-1 et seq. (D.E. 14, ¶ 120). Specifically, Plaintiffs allege Defendants delayed any response to their public records requests, imposed unreasonable review timelines, and improperly invoked attorney-client privilege, but expedited public records requests from political allies. (D.E. 14, ¶¶ 123-124). Plaintiffs also allege the Village improperly withheld a legal opinion, provided by the Village attorney, and should have disclosed said opinion because the opinion was relied upon to vote to approve the Public Trail Project. (D.E. 14, ¶¶ 50-52, 125-126).

There is no set time prescribed by North Carolina Statutes in which a municipality must respond to a public records request. Instead, municipalities are bound to allow review of public records at reasonable times. N.C.G.S. § 132-6(a). Plaintiffs' allegations fail to allege facts sufficient to show any responses to public records requests were unreasonable.

Plaintiffs' allegations constitute bare and conclusory allegations, which fail to meet the plausibility standard set forth in *Twombly. Twombly*, 550 U.S. at 570. Where claims are supported by only vague and conclusory allegations of wrongdoing, Plaintiffs fail to provide Defendants with the notice they are entitled to under Rule 8 of the Federal Rules of Civil Procedure. *Asanov v.*

*Plekan*, No. 5:23-CV-310-M-KS, 2024 WL 1601204, at *4 (E.D.N.C. 2024). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Plaintiffs' broad allegations that Defendants have delayed or imposed unreasonable review times to their public records requests do not state a claim. "[N]aked assertion[s] devoid of further factual enhancement" are subject to 12(b)(6) dismissal. *Iqbal*, 556 U.S. at 678. Plaintiffs have not alleged what public records requests they have made, the specific dates of the requests, how long it has taken VOM to respond to those requests, how many requests were made, or the reasons given for any delay or failure to produce requested documents. Rather, Plaintiffs vaguely reference "multiple requests" that were made "[t]hroughout the year of 2024." (D.E. 14, ¶ 45). Such a failure does not allow Defendants to adequately respond to the allegations since it is unclear which requests Plaintiffs claim were improperly responded to. Similarly, without information about the requests and the alleged delays, the Court is unable to determine whether the Village's response was reasonable.

Next, Plaintiffs allege Defendants improperly withheld a legal opinion from production. Legal advice between the Village Council and their Village attorney is not a public record. N.C.G.S.A. §§ 132-1.1(a), 143-318.11(a)(3). Plaintiffs allege that the information withheld is a legal opinion regarding the legality of the Public Trail Project. (D.E. 14, ¶ 50). To the extent it is in writing, a legal opinion regarding the legality of a Public Trail Project would constitute a writing made within the scope of the attorney-client relationship regarding potential litigation under N.C.G.S.A. § 132-1.1(a). Similarly, such an opinion made during a closed session would fall under attorney-client privileged communications pursuant to N.C.G.S.A. § 143-318.11(a)(3).

"[P]rivilege must be viewed in light of the traditional duties performed by attorneys…" *Multimedia Publishing of North Carolina, Inc. v. Henderson County*, 145 N.C.App. 365, 371, 550 S.E.2d 846, 851 (Ct.App. 2001). "[D]iscussions regarding the drafting, phrasing, scope and meaning of proposed enactments would be permissible during a closed session. Discussions regarding their constitutionality and possible legal challenges would likewise be so included." *Id.* In *Multimedia*, the Court held that discussions during closed session with the County attorney were privileged where the attorney explained the difference between two ordinances and then discussed the legality of an action. *Id.*, 145 N.C.App. at 372, 550 S.E.2d at 851. The matter in question here is a legal opinion on the legality of a project. Such communications clearly fall within the purview of attorney-client privileged communications, which is consistent with the holding in *Multimedia*.

In *Chase v. City of Portsmouth*, the plaintiffs filed a motion to compel a letter written by the city attorney to the city council members, which addressed the legal implications of a vote on whether to grant a use permit on property owned by the plaintiffs. 236 F.R.D. 263, 264 (E.D. Va. 2006). A councilmember discussed the letter from the attorney at the city council meeting. *Id.* at 268. After litigation ensued, when the councilmember was questioned about his remarks at his deposition, the councilmember objected to answering on the basis of attorney-client privilege. *Id.* The court provided that a privilege may be "waived if a disclosing party did not take reasonable steps to insure and maintain the confidentiality of the information" *Id.* at 267 (citing *In re Grand Jury Proceedings*, 727 F.2d 1352, 1356 (4th Cir. 1984).

While the court in *Chase* did find that the attorney-client privilege was waived, the Defendants in this case merely cited that they made their decision as to the Public Trail Project under the guidance of legal counsel, rather than to the contents of the legal conclusion. Unlike the Defendants in *Chase*, the Defendants in this case did not cite to the contents of their legal advice,

and instead, merely referenced their legal counsel's guidance in reaching their decision. In other words, the Defendants took the necessary steps to ensure the confidentiality of their legal advice, without waiving their attorney-client privilege. The Defendants ensured that the privilege would not be waived by not exposing the legal reasoning that they relied on by their counsel, and instead, provided the conclusion they reached based off of their counsel's advice. Plaintiffs' Complaint alleges that Council relied upon the legal advice from their attorney in voting to approve the Public Trail Project. (D.E. 14, ¶ 52). Defendant is unaware of any legal authority that states attorney client privilege does not apply where a Council member relies on legal advice to vote on a matter. Such a holding would be impractical and cut against the purpose of attorney-client privileged communications. If a party waived attorney-client privilege whenever relying upon it, there would be no purpose in protecting it in the first place. In consideration of the above, the Defendant has demonstrated that the legal opinion as to the legality of the Easement was privileged, and has not been waived.

## II. Plaintiffs have Failed to State a Claim for First Amendment Violations.

Plaintiffs have failed to allege sufficient facts to establish municipal liability for the Village under § 1983. Municipal liability exists only where the entity has a pattern or policy of constitutional violations. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). To state a claim pursuant to § 1983 under *Monell* against the Village for municipal liability, Plaintiffs must allege that the Village, or their officers, proximately caused the constitutional injury, through the promulgation, or tacit approval, of a municipal policy or custom. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035-2036 (1978). Plaintiffs must plead two essential elements: (1) that Plaintiffs suffered a deprivation of a Constitutional or federal statutory right; and (2) that Plaintiffs suffered the alleged deprivation as a result of an action

taken under color of state law. *Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth.,* 320 F.Supp.2d 378, 403 (M.D.N.C. 2004).

First, there are insufficient allegations to show that Plaintiffs suffered a deprivation of a constitutional or statutory right. While the law prohibits government officials from engaging in retaliatory acts in response to speech in fear of a chilling effect, "not every reaction made in response to an individual's exercise of his First Amendment right to free speech is actionable retaliation." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000) (*quoting DiMeglio v. Haines,* 45 F.3d 790, 806 (4th Cir.1995); *ACLU v. Wicomico County, Md.,* 999 F.2d 780, 785 (4th Cir. 1993) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights."). In a § 1983 retaliation claim plaintiff must demonstrate that the defendant's actions had some adverse impact on the exercise of the plaintiff's constitutional rights. *Suarez Corp. Indus.*, 202 F.3d at 685; *Wicomico County,* 999 F.2d at 785.

Plaintiffs' allegations that they were deprived of their constitutional rights to free speech are not supported by the Amended Complaint. Plaintiffs first allege their free speech rights were violated when Defendants called upon Union County Sheriff deputies to appear at public meetings to discredit Ms. Comiskey's "factual reporting." (D.E. 14, ¶¶ 28-38). Plaintiffs claim Defendants cajoled Union County Sheriff deputies into falsely stating crime statistics during these public meetings, thus creating a "chilling effect upon Plaintiffs' exercise of their free speech." (*Id.*, ¶¶ 33-36). Clearly, Plaintiffs believe the information they presented was correct and the information presented by Union County Sheriff deputies was incorrect, however, it is unclear how Plaintiffs' belief that law enforcement provided them incorrect information constitutes a deprivation of their First Amendment Rights by the Village. Plaintiffs' allegations that Ms. Vandenberg was able to

4900-1129-0931, v. 4

convince sworn law enforcement officers to lie to the public about crime statistics in an effort to stifle their First Amendment rights is not plausible nor supported by anything more than speculation. Defendant is unaware of legal authority holding that discrediting someone constitutes a First Amendment violation. To hold as such is a dangerous proposition. The result would allow citizens to assert First Amendment violations anytime a governmental entity disagrees with them by simply alleging the entity attempted to discredit them by making false statements contradictory to their own.

Plaintiffs allege Defendants responded unusually fast to a public records request made by a citizen and postponed or refused to respond to Plaintiffs' lawful request for records. (D.E. 14, ¶ 135). The First Amendment does not guarantee citizens the right to receive responses to their public records requests faster than others. Defendant is not aware of any legal authority supporting Plaintiffs' purported allegations that their First Amendment rights are being violated where they do not receive responses to public records requests as quickly as they might like.

Next, Plaintiffs seem to suggest Village personnel discussing the possibility of eminent domain constitutes a violation of their First Amendment rights. (*Id.* at ¶¶ 72-74). Pursuant to N.C.G.S. § 40A-3, municipalities have the power of eminent domain. Surely, a councilmember for a municipality discussing a power granted to the municipality under North Carolina state law cannot constitute a violation of a party's First Amendment Rights.

Further, Plaintiffs allege that Ms. Vandenburg has enacted an "unwritten VOM policy that 'No is not an option," that "Ms. Vandenberg has orchestrated a sustained campaign to target, harass, and silence homeowners", and that "Defendants' collective entrenchment in this scheme has driven them to abuse government power." (D.E. 14, ¶¶ 68-71). Plaintiffs' Amended Complaint is still devoid of facts to support these conclusory allegations. Notably missing from Plaintiffs

Amended Complaint are any facts alleging any injuries suffered as a result of the purported actions by Defendants which chilled their First Amendment rights.

The "under color of state law" element imposes upon Plaintiffs the burden of showing that an official policy or custom of the Village caused the constitutional deprivation. *Id.; Monell,* 436 U.S. at 691 ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy or some nature caused a constitutional tort."). Thus, a constitutional tort must have been committed: (1) by the governing body or an ultimate policy making official of the municipality; (2) by an employee as a result of deliberate indifference of the municipal governing body to the training of the employee; or (3) by an employee acting pursuant to a policy or custom of the municipality. *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). A custom, policy, or practice be shown:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle,* 326 F.3d 463, 471 (4th Cir. 2003) *(citation omitted.)*

"Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of County Com'rs of Bryan County v. Brown*, 520 U.S. 397, 405 (1997). "The substantive requirements for proof of municipal liability are stringent." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994).

Plaintiffs are unable to meet their burden. Plaintiffs Amended Complaint contains no allegations of any policies, customs, or practices resulting in violations of Plaintiffs' First

Amendment rights under the Constitution. In an attempt to cure that deficiency, Plaintiffs allege the Village has adopted an unwritten policy that "no is not an option." The facts alleged however, suggest Plaintiffs' are just unhappy with the position Defendants are taking in response to their opposition of the Trail Project. Such allegations fail to meet the standard required to establish municipal liability under *Monell*. In support of their claim for violations of their First Amendment rights, Plaintiffs point to a number of actions allegedly taken by Ms. Vandenberg. (D.E. 14, ¶¶ 132, 135). "A municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell,* 436 U.S. at 691; *see also Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 316 F.App'x 279, 282 (4th Cir. 2009) (stating that "the principles of respondeat superior have no application to § 1983 claims").

Plaintiffs bare and conclusory allegations fail to meet the plausibility standard set forth in *Twombly. Twombly*, 550 U.S. at 570. Finally, Plaintiffs may not rely upon the facts in this case to establish *Monell* liability. In *Monell*, the Supreme Court held that a custom may not arise out of a single incident. *Monell*, 436 U.S. at 691. The courts have ruled that only where a history of widespread abuse of constitutional rights exists can knowledge be imputed to a municipality. *See Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983); *Milligan v. City of Newport News*, 743 F.2d 227 (4th Cir. 1984).

### III. Plaintiffs Civil Conspiracy Claim is Barred.

Plaintiffs allege Defendants engaged in a civil conspiracy to violate their First Amendment Rights in violation of 42 U.S.C. § 1983. (D.E. 1-1, ¶¶ 142-150).

In order to establish a civil conspiracy claim under § 1983, Plaintiffs "must present evidence that [Defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [Plaintiffs'] deprivation of a constitutional right." *Hinkle v.*

*City of Clarksburg. W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996) (citing *Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir. 1992)). This burden is "weighty." *Penley v. McDowell Cty. Bd. of Educ.*, 876 F.3d 646, 658 (4th Cir. 2017) (internal quotation marks omitted) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)). There must be an underlying Constitutional deprivation in order to prevail on a conspiracy claim under § 1983. See *Nance v. City of Albemarle, North Carolina*, 520 F.Supp.3d 758, 801 (M.D.N.C. 2021) (Court dismissed a claim for § 1983 civil conspiracy where Plaintiffs "failed to plausibly allege" constitutional deprivations); *Byrd v. Hopson*, 265 F.Supp. 2d 594, 599 (W.D.N.C. 2003) (Under North Carolina law, "there is no independent cause of action for civil conspiracy; the claim can arise only where there is an underlying claim for unlawful conduct."); *see also*, e.g., *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999); *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984) ("[I]t remains necessary to prove an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient."). "While they need not produce direct evidence of a meeting of the minds, [plaintiffs] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Hinkle*, 81 F.3d at 421. The evidence "must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.* "[R]ank speculation and conjecture" are not enough. *See id.* at 422.

Here, Plaintiffs' allegations of a conspiracy amount to no more than the "rank speculation and conjecture" that are insufficient to establish a claim. As noted above, Plaintiffs have failed to sufficiently plead the Village violated their First Amendment rights. Therefore, Plaintiffs' claim of conspiracy to violate their First Amendment rights must necessarily fail. Even if Plaintiffs have

4900-1129-0931, v. 4

sufficiently pled a claim under 42 U.S.C. § 1983 for violations under the First Amendment, their § 1983 civil conspiracy claim is barred by the intracorporate conspiracy doctrine.

"The intracorporate conspiracy doctrine recognizes that a corporation cannot conspire with its agents because the agents' acts are the corporation's own." *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 352 (4th Cir. 2013). Specifically, "there is no unlawful conspiracy when officers within a single corporate entity consult among themselves and then adopt a policy" because two agents of the same legal entity are not considered to be "two or more separate people" forming an agreement. *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017) (citing *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769—771 (1984). "The doctrine is applicable to municipalities. Moreover, merely suing the officers, employees, or agents in their individual capacities does not change the result." *Fox v. City of Greensboro*, 807 F.Supp.2d 476, 499 (M.D.N.C. 2011); *see also Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985). Further, "a conspiracy between a corporation and its agents, acting within the scope of employment, is a legal impossibility." *Marmott v. Md. Lumber Co.*, 807 F.2d 1180, 1184 (4th Cir. 1986) (upholding district court's ruling that plaintiff failed to allege a conspiracy because the complaint only named the company and its employees as conspirators). An individual acts within the scope of her employment when she acts "in furtherance of the principal's business and for the purpose of accomplishing the duties of his employment." *Matthews v. Food Lion, LLC*, 205 N.C. App. 279 (2010) (*quoting Troxler v. Charter Mandala Center*, 89 N.C. App. 268, 271, 365 S.E.2d 665, 668 (1988).

However, Plaintiffs may state a conspiracy claim where an agent's actions were not authorized by the corporation or were outside the normal course of their corporate duties. *Buschi v. Kirven*, 775 F.2d 1240, 1252-53 (4th Cir. 1985). Plaintiffs' Amended Complaint fails to allege facts to support Ms. Vandenberg was acting outside the normal course of her corporate duties. In

4900-1129-0931, v. 4

fact, Plaintiffs allege Ms. Vandenberg was serving as mayor pro tempore for the Village at all times relative to the matter set forth in the Complaint. (D.E. 14, ¶ 5). Plaintiffs only allegation that Ms. Vandenburg's actions were outside the scope of her authority were in reference to the defamation claim, which has not been brought against the Village. (*Id.* at ¶ 101). There are no allegations Ms. Vandenberg was acting outside the scope of her official position with the Village as it pertains to the First Amendment claims. Rather, the allegations suggest all of Ms. Vandenberg's actions were in the scope of her official duties for the Village. For instance, Ms. Vandenberg received the Settlement Offer in her position of being on the Village Council, and when she invited the officers to the Village Council meetings on February 22, 2024, and March 28, 2024, she likewise acted in her position as being on the Village Council. (Id. at ¶¶ 55, 29). Plaintiffs further allege Ms. Vandenberg and the Village's actions all constituted state action. (D.E. 14, ¶ 136). Plaintiffs have alleged her motives in these actions were improper, but each action was enacted as part of her role on Village Council. Therefore, Plaintiffs' claim for civil conspiracy is barred.

## CONCLUSION

For the foregoing reasons, the Village respectfully requests that their Motion to Dismiss Plaintiffs' Amended Complaint be GRANTED, and that Plaintiffs' claims against them be DISMISSED WITH PREJUDICE.

This the 11th day of April 2025.

CRANFILL SUMNER LLP

BY: */s/Jake W. Stewart*
Jake W. Stewart, NC Bar # 51157
*Attorney for Defendants*
P.O. Box 30787
Charlotte, NC 28230
Telephone (704) 332-8300

Facsimile (704) 332-9994
jstewart@cshlaw.com

## CERTIFICATION REGARDING USE OF ARTIFICIAL INTELLIGENCE

Pursuant to the June 18, 2024 Standing Order of this Court In Re: Use of Artificial Intelligence, 3:24-mc-104, counsel, by signing above, submits the following certification regarding Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss.

1. No artificial intelligence was employed in doing the research for the preparation of this Memorandum, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg, as well as Google and Google Scholar;

2. Every statement and every citation to an authority contained in this Memorandum has been checked by the undersigned as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 11th day of April 2025.

>                 CRANFILL SUMNER LLP
>
> BY:    */s/Jake W. Stewart*
>                 Jake W. Stewart, NC Bar # 51157
>                 *Attorney for Defendants*
>                 P.O. Box 30787
>                 Charlotte, NC 28230
>                 Telephone (704) 332-8300
>                 Facsimile (704) 332-9994
>                 jstewart@cshlaw.com

**CERTIFICATE OF SERVICE**

This is to certify that the undersigned has this day electronically filed the foregoing ***MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT VILLAGE OF MARVIN'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT*** with the Clerk of Court using the CM/ECF system and will send notification through the U.S. mail and electronic mail of such filing to the following:

> Benjamin J. Axelman
> David G. Redding
> TLG Law
> 2907 Providence Road, Suite 303
> Charlotte, NC 28211
> Telephone: (704) 612-2128
> Facsimile: (704) 626-6552
> baxelman@tlg-law.com
> dredding@tlg-law.com
> *Attorneys for Plaintiffs*

This the 11th day of April, 2025.

CRANFILL SUMNER LLP

BY: /s/*Jake W. Stewart*_____
Jake W. Stewart, NC Bar #51157
Attorney for Defendant
P.O. Box 30787
Charlotte, NC 28230
Telephone (704) 332-8300
Facsimile (704) 332-9994
jstewart@cshlaw.com

20
Case 3:25-cv-00087-KDB-DCK    Document 17    Filed 04/11/25    Page 20 of 20
4900-1129-0931, v. 4