IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:25-CV-00087-KDB-DCK

| | |
|---|---|
| CHRIS COMISKEY and VICTORIA COMISKEY, <br><br> *Plaintiffs*, <br><br> v. <br><br> VILLAGE OF MARVIN and KIM VANDENBERG, <br><br> *Defendants*. | **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT VILLAGE OF MARVIN'S MOTION TO DISMISS** |

NOW COME Plaintiffs, by and through counsel, respectfully submitting their Memorandum of Law in Opposition to Defendant Village of Marvin's Motion to Dismiss.

## FACTUAL BACKGROUND

Plaintiffs are residents and homeowners in the Marvin Creek subdivision in the Village of Marvin ("VOM"), an incorporated municipality in Union County, North Carolina. Amended Compl., ECF 14, ¶¶ 1-3, 12-13. Defendant Kim Vandenberg ("Ms. Vandenberg") is the Mayor Pro Tempore of VOM. *Id.* at ¶ 5. In late 2023, the Marvin Creek homeowners association (the "HOA") purported to grant an easement (the "Easement") to VOM for the purpose of constructing a public trail (the "Public Trail Project") through the woods next to Plaintiffs' home, on property which is owned by the HOA (the "HOA Private Property"). *Id.* at ¶¶ 21-22.

Plaintiffs, along with a plethora of their neighbors, have vehemently opposed the legality of the Easement and of the Public Trail Project. *See, e.g., id.* at ¶ 40-41. In response to Plaintiffs' outspoken objections to the legality of the Easement, Plaintiffs allege that Defendants have

1

engaged in concerted and joint efforts to suppress Plaintiffs' freedom of speech and to retaliate against them. *See, e.g., id.* at ¶ 32, 67-73.

Plaintiffs initially filed this action against Defendants in the courts of Union County, North Carolina (the "State Court") on January 24, 2025. ECF 1, p. 1. On February 5, 2025, Defendants removed the action to this Court. *Id.* On February 6, 2025, this Court remanded Plaintiffs' state land use claims back to the State Court, but retained jurisdiction over Plaintiffs' legal claims pursuant to 28 U.S.C. §§ 1331 and 1367. ECF 2. On February 10, 2025, the State Court granted a temporary restraining order in favor of Plaintiffs, enjoining Defendants from construction upon the Easement, and such restraining order is still in force. On February 27, 2025, VOM filed a motion to dismiss the case in the State Court, and the State Court has not yet issued a written order on that motion.

As to the claims which remain before this Court, Plaintiffs allege Defendants have (1) engaged in defamation, (2) intentionally inflicted emotional distress upon Plaintiffs, (3) violated North Carolina's laws regarding open and transparent governance, and (4) engaged in a conspiracy for the purpose of (5) violating Plaintiffs' rights under the First Amendment of the United States Constitution. ECF 14, pp. 9-14.

Plaintiffs allege that the covenants, conditions, and restrictions (CCRs) which govern Marvin Creek clearly prohibit the HOA from granting easements for public use, and by extension, grant to each of the homeowners a negative easement right to prevent the dedication of HOA Private Property for public use. *Id.* at ¶¶ 16-19. In February 2024, Plaintiffs notified Defendants that the Easement was invalidly granted by the HOA because the purported granting of the Easement violated the CCRs, thus the Easement was illegal and void. *Id.* at ¶ 24.

In the time since Defendants were first notified of Plaintiffs' position on the matter, Plaintiffs allege in detail that Defendants have engaged in a concerted and purposeful campaign to silence opponents of the Public Trail Project by, *inter alia*, abusing governmental powers, violating governmental transparency laws, intimidating Plaintiffs and others using proxies and agents, improperly meddling in HOA affairs and colluding with the HOA against Plaintiffs, and directing and/or assisting with defamation per se which was intended to harm Plaintiffs. *See, e.g., id.* at ¶¶ 21, 38, 41, 53, 59, 79, 85. On April 11, 2025, VOM filed the motion to dismiss Plaintiffs' claims that remain before this Court, ECF 16, to which this Memorandum responds.

## ARGUMENT

I. **VOM's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) should be denied as frivolous, and their motion pursuant to Rules 12(b)(4) and 12(b)(5) should be denied as moot.**

VOM asserts that Plaintiffs' Amended Complaint should be dismissed pursuant to Rules 12(b)(2), 12(b)(4), and 12(b)(5). ECF 16. However, VOM does not argue at all as to why this Court lacks personal jurisdiction over VOM, and could not so argue; VOM is a municipality located wholly within the state in which this Court sits. VOM's "12(b)(2)" argument is thus merely duplicative of its arguments regarding service of process.

Federal Rule of Civil Procedure 4(j)(2)(B) allows for service of process upon a local government by "serving a copy of [the summons and complaint] in the manner prescribed by that state's law for serving a summons or like process on such a defendant." North Carolina's Rule 4 provides that a village is effectively served where its clerk is properly served with the summons and complaint. N.C. Gen. Stat §1A-1, Rule 4(j)(5)a.

Plaintiffs have in fact properly served VOM via the Village Clerk as required by North Carolina's Rule 4(j)(5)a., and as admitted by VOM in their (first) Brief in Support of

3

Defendant's Motion to Dismiss. ECF 12, p. 7. As a result, VOM's argument that they have not been properly served is moot.

  II.  **Plaintiffs have sufficiently stated a claim for statutory violations under North Carolina's Open Governance laws.**

    **A. Plaintiffs have sufficiently pled violations of N.C. Gen. Stat. § 132-1.**

VOM next argues that Plaintiffs "fail to allege facts sufficient to show any responses to public records requests were unreasonable." ECF 17, p. 7. VOM posits that Plaintiffs' allegations "fail to provide Defendants" with notice as to the claim they must defend against, *see id.*, seemingly contending that Plaintiffs were expected to list each and every one of the document requests that were and were not responded to by VOM.

A cause of action should not be dismissed under Federal Rule of Civil Procedure 12(b)(6) unless, with all evidence viewed in the light most favorable to the plaintiff and with the plaintiff's allegations taken as true, *see Christopher v. Harbury*, 536 U.S. 403 (2002), the court cannot draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

"Factual allegations must be enough to raise a right to relief above the speculative level *on the assumption that all of the complaint's allegations are true*." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (emphasis added). The "plausibility" standard requires that a complainant plead "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the underlying facts of a claim. *Id.* "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664 (2009). Legal conclusions in a complaint must be supported by factual allegations. *Id.* "When there are well-pleaded factual allegations, a court

should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

Under North Carolina law, "public records" refers to "all documents, papers, letters, maps, books, photographs, films, sound recordings, magnetic or other tapes, electronic data-processing records, artifacts, or other documentary material, regardless of physical form or characteristics, made or received pursuant to law or ordinance in connection with the transaction of public business by any agency of North Carolina government or its subdivisions." N.C. Gen. Stat. § 132-1(a). This law applies to "every public office, public officer or official … institution, board, commission, bureau, council, department, authority or other unit of government of the State or of any county, unit, special district or other political subdivision of government." *Id.*

"The public records and public information compiled by the agencies of North Carolina government or its subdivisions are the property of the people" and thus "*it is the policy of this State that the people may obtain copies of their public records* and public information free or at minimal cost unless otherwise specifically provided by law." *Id.* § 132-1(b) (emphasis added).

"*[I]t is the public policy of North Carolina* that the hearings, deliberations, and actions" of legislative, policy-making, and advisory bodies "be conducted openly." N.C. Gen. Stat. § 143-318.9 (emphasis added). "When a public body meets in closed session, it shall keep a general account of the closed session so that a person not in attendance would have a reasonable understanding of what transpired. ... Such minutes and accounts shall be public records within the meaning of the Public Records Law, G.S. 132-1 et seq." *Id.* at § 143-318.10.

"[A] state agency has the burden of compliance [with North Carolina's Public Records Law], subject to judicial oversight," because the Act "strongly favors the release of public records to increase transparency in government." *State Emps. Ass'n of N. Carolina, Inc. v. N.*

5

*Carolina Dep't of State Treasurer*, 364 N.C. 205, 214, 695 S.E.2d 91, 97 (2010). "Judicial review of a state agency's compliance with a request, prior to the categorical dismissal of this type of complaint, is critical to ensuring that, as noted above, public records and information remain the property of the people of North Carolina." *Id.*

VOM once again appears to be moving to dismiss Plaintiffs' claims on the basis that Plaintiffs' have not yet proffered evidence obtainable only via discovery. Plaintiffs have alleged that VOM delayed—at times for many months—*many* document requests, but that VOM responded to a document request by a political ally, whose interests were aimed against Plaintiffs' own, within a single day. *See, e.g.*, ECF 14, ¶¶ 45-49, 57-59.

Indeed, it would go far above the bar of the "plausibility" standard—and beyond the bounds of practicality—for Plaintiffs to have to identify in their Complaint each of the thousands of documents which were requested. VOM's own system and records are by far the most effective database which could show what requests were made, when they were made, and whether and when they were fulfilled or rejected. Further, there have been numerous emails between Mr. Comiskey and VOM's clerk regarding the statuses of particular document requests, such that VOM cannot now claim ignorance as to such requests. Having received all the public requests themselves, VOM is surely on notice as to which requests it has and has not fulfilled, and as such, they are on notice as to the bases of Plaintiffs' claims.

Additionally, it is at least plausible that discovery would lead to more evidence favoring Plaintiffs' claim, not less.

As a result, Plaintiffs have sufficiently alleged that VOM has violated North Carolina's open governance laws so that these claims should survive dismissal under Rule 12(b)(6).

**B. VOM's public reliance upon the legal opinion of their attorney prior to voting to approve the Public Trail Project constitutes a waiver of attorney-client privilege.**

6

Case 3:25-cv-00087-KDB-DCK     Document 21     Filed 05/09/25     Page 6 of 16

North Carolina's statute requiring open governance is explicitly grounded in the State's public policy. N.C. Gen. Stat. § 143-318.9.

"Evidentiary privileges in litigation are not favored, and even those rooted in the Constitution must give way in proper circumstances." *Herbert v. Lando*, 441 U.S. 153, 175 (1979). Attorney-client privilege applies "only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998).

"The burden is on the proponent of the attorney-client privilege" to prove the privilege's applicability as well as the proponent's non-waiver of the privilege. *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982). "Any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter." *Id.*

Where a governmental entity discloses substantive aspects of their attorney's advice, attorney-client privilege may be waived. *See, e.g., Chase v. City of Portsmouth*, 236 F.R.D. 263, 268 (E.D. Va. 2006) (holding that attorney-client privilege was waived by the city when a councilmember cited a letter from their attorney at a public meeting); *United States v. Cohn*, 303 F. Supp. 2d 672, 679 (D. Md. 2003) ("To the extent that Four Star may have met its burden of

7

Case 3:25-cv-00087-KDB-DCK    Document 21    Filed 05/09/25    Page 7 of 16

proving … attorney-client privilege, it clearly waived the privilege … when it voluntarily disclosed communications to the grand jury ….").

In *Multimedia Publishing of North Carolina, Inc. v. Henderson County*, 145 N.C. App. 365, 550 S.E.2d 846 (N.C. App. 2001), the Court addressed the issue of whether municipal attorney legal advice provided in a closed session retains its protected status when its conclusions are cited in a public setting in support of a forthcoming vote. The Court held that when a legislative body references the conclusions of legal advice in a public session—and relies on that advice as the basis for a vote—any privilege covering the legal advice is waived. *See id.* at 374, 550 S.E.2d at 852. Specifically, the *Multimedia* Court reasoned that "in light of the general public policy favoring open meetings, the attorney-client [privilege] is to be construed and applied narrowly" and that "'public bodies [cannot simply] delegate responsibilities to attorneys and then cloak negotiations and [closed] sessions in secrecy by having attorneys present.'" *Id.* at 371, 550 S.E.2d at 850-851 (2001) (citations omitted).

In other words, once the confidential legal advice is "brought out" into the public record by its citation and subsequent reliance in a public decision, the attorney-client privilege no longer protects that information.

Defendants, however, have chosen to rely on *Multimedia* in a fragmented manner. Their arguments acknowledge only the initial discussion of attorney-client privilege, while conspicuously omitting the subsequent holding that the confidential legal advice loses its protection when cited and relied upon for public decision-making. Defendants fail to embrace *Multimedia*'s full implication—that public reliance upon the confidential legal advice, as evidenced by the legislative vote, generally constitutes a waiver of attorney-client privilege, as

8

the public has the right to open and transparent governance as a matter of North Carolina public policy.

The doctrine of secret lawmaking exists precisely to balance the need for confidential legal advice in closed sessions with the public's right to transparency in legislative decisions. Confidential discussions are protected to ensure candor; however, when such discussions are referenced in public and used as a basis for governmental action, the public's right to know must prevail.

Here, VOM has not carried its burden of proving that the legal opinion provided by their attorney as to the legality of the Easement (the "Legal Opinion") was privileged, nor that such privilege had not been waived. Insofar as Defendants have already relied upon the Legal Opinion in publicly defending their actions in continuing to pursue the Public Trail Project, they may not now use privilege as both a sword and a shield by claiming that the advice upon which they relied is privileged. As a result of the foregoing, Plaintiffs' claims arising under North Carolina's open-governance laws should not be dismissed.

### III. Plaintiffs sufficiently point to an unconstitutional policy or custom to state a claim under 42 U.S.C. § 1983.

With regard to the Fifth and Sixth causes of action in Plaintiffs' Amended Complaint, alleging VOM's violations of Plaintiffs' First Amendment rights, "it is well settled that a municipal entity has no claim to immunity in a section 1983 suit." *Moore v. City of Creedmoor*, 345 N.C. 356, 366, 481 S.E.2d 14, 21 (1997).

"For purposes of [42 U.S.C.] Section 1983, a municipality is considered a "person" and thus is subject to suit." *Hunter v. Town of Mocksville, N. Carolina*, 897 F.3d 538, 553 (4th Cir. 2018) (citing *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690 (1978)). "Although municipal liability under Section 1983 attaches only to 'action [taken] pursuant to official municipal policy

9

of some nature,' … 'it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.'" *Hunter v. Town of Mocksville, N. Carolina*, 897 F.3d 538, 554 (4th Cir. 2018) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 477 (1986)).

"While municipal 'policy' is found most obviously in municipal ordinances, regulations and the like which directly command or authorize constitutional violations, … it may also be found in formal or informal *ad hoc* 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy." *Spell v. McDaniel*, 824 F.2d 1380, 1385–86 (4th Cir. 1987) (citing *Pembaur* to highlight that a single decision may constitute a policy).

VOM argues that "Plaintiffs Amended Complaint contains no allegations of any policies, customs, or practices resulting in" First Amendment violations. ECF 17, p. 13. But Plaintiffs point to far more than one decision and instance in which VOM and Ms. Vandenberg took action to stymie and retaliate against Plaintiffs' exercise of their First Amendment rights. Plaintiffs' Complaint alleges all throughout that Defendants have engaged in systematic and broad activities with precisely that goal. For example, Plaintiffs have alleged that Defendants have (a) misused law enforcement officers in order to intimidate opponents of VOM's political agenda, ECF 14, ¶¶ 28-37; (b) improperly meddled with private HOA matters, *id.* at ¶¶ 43-44, 66, 72-74; (c) colluded with HOA board members to silence Plaintiffs, *id.* at ¶ 149; and (d) falsely claimed that nobody had challenged the legality of their actions for the purpose of passing a vote, *id.* at ¶ 26.

VOM argues that where an employee of a municipality is the one alleged to have caused injury, "rigorous standards of culpability and causation must be applied." ECF 17, p. 13 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 398 (1997)). VOM further

argues that the "substantive requirements for *proof* of municipal liability are stringent." *Id.* (citing *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994) (emphasis added).

But neither of those authorities are pertinent to the posture of this case, as the former was a review of a jury verdict and thus required a much higher burden of proof than is required at this juncture, and if anything, the latter case may be fatal to VOM's arguments.

In *Jordan by Jordan*, a family sued their local governments and two governmental employees after a social services worker apprehended their young son and took him to foster care without the plaintiffs' knowledge. 15 F.3d at 336-337. On appeal, and specifically as to the question of municipal liability for the actions of a municipality's agents, the Fourth Circuit provided that "we disagree that appellants were required to allege more than one incident of misconduct in order to withstand a motion to dismiss under Rule 12(b)(6)." *Id.* at 337. The Court further found that "The [United States] Supreme Court … has only recently confirmed that section 1983 claims are not subject to a 'heightened pleading standard' paralleling the rigors of proof demanded on the merits." *Id.* at 338 (citing *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 163 (1993). The *Jordan by Jordan* court then stated that, in *Leatherman*, "Chief Justice Rehnquist concluded for the Court that 'it is impossible to square the "heightened pleading standard" ... with the liberal system of "notice pleading" set up by the Federal Rules.'" *Id.* (citations omitted).

"We thus conclude that, after *Leatherman,* a section 1983 plaintiff seeking to impose municipal liability must satisfy only the usual requirements of notice pleading specified by the Federal Rules. He is required under Rule 8(a)(2) to provide nothing more than 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 339 (citations omitted). "There is no requirement that he

11

detail the facts underlying his claims, or that he plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation." *Id.*

Plaintiffs have thus properly alleged that Defendants' concerted and consistent actions amount to a policy or custom of stifling lawful opposition to the Public Trail Project. Defendants' actions, taken collectively, have created a climate of intimidation and retaliation by using both formal and informal means to silence dissent. As explained in *Hunter*, the fact that a municipality is subject to suit under § 1983 does not depend solely on the existence of a formal municipal policy but also on the cumulative impact of actions taken by officials. 897 F.3d at 553-554. Further, Plaintiffs need not detail the facts underlying their claims, nor must they plead multiple incidents of constitutional violations that may later be necessary to prove.

Plaintiffs' allegations regarding the civil conspiracy to violate their First Amendment rights are similarly supported. Plaintiffs allege that Defendants conspired with the HOA, and to the extent that Ms. Vandenberg was acting outside her official capacity, with each other—through coordinated actions and deliberate omissions—to prevent Plaintiffs from voicing opposition to the Easement and the Public Trail Project. Plaintiffs cannot possibly *prove* the extent to which Defendants conspired and whether or not VOM effectively ratified Ms. Vandenberg's actions without the benefit of at least reasonable discovery.

Because Plaintiffs sufficiently point to a policy or custom which is reasonably calculated to prevent Plaintiffs from voicing legal and political opposition to the Easement and the Trail Project, Plaintiffs have stated a viable claim under 42 U.S.C. § 1983 which is sufficient to survive a motion to dismiss. Further, because Plaintiffs have sufficiently alleged that VOM

12

Case 3:25-cv-00087-KDB-DCK    Document 21    Filed 05/09/25    Page 12 of 16

conspired with other parties, including an employee who was acting outside of her official capacity, Plaintiffs' claim for civil conspiracy should likewise survive.

### IV. Plaintiffs' civil conspiracy claim is not barred by incorporate conspiracy doctrine.

Finally, VOM contends that Plaintiffs' § 1983 civil conspiracy claim is barred by the intracorporate conspiracy doctrine.

VOM is correct that there is no unlawful conspiracy when officers within a single corporate entity consult among themselves and then adopt a policy for the entity. *See Copperweld Corp v. Independence Tube Corp.,* 467 U.S. 752, 769–771 (1984). Under intracorporate-conspiracy doctrine, an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy. *Id*. However, where a plaintiff alleges that the agents are acting beyond the scope of their official capacities, intracorporate conspiracy doctrine is inapplicable. *See Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985) (providing that intracorporate conspiracy doctrine "is inapplicable 'where the plaintiff has alleged that the corporate employees were dominated by personal motives or where their actions exceeded the bounds of their authority.'") (citations omitted).

Plaintiffs have alleged and maintain that Ms. Vandenberg was acting well outside of the scope of her official duties with respect to certain of the claims, and as such intracorporate conspiracy doctrine would be inapplicable as to those allegations. Further, Plaintiffs have alleged that Defendants have conspired with the HOA, ECF 14, ¶ 149, an entity which is not directly related to the municipality for the purposes of intracorporate conspiracy doctrine.

Because Plaintiffs have plausibly alleged that VOM and Ms. Vandenberg have conspired in contexts in which Ms. Vandenberg was acting outside the scope of her official authority, and because Plaintiffs have alleged that Defendants have otherwise conspired with the HOA, both of

which conspiratorial schemes were for the purposes of violating Plaintiffs' First Amendment rights, intracorporate conspiracy doctrine is inapplicable and Plaintiffs' claims should survive dismissal.

## CONCLUSION

For the foregoing reasons, VOM's Motion to Dismiss should be denied on all grounds.

Respectfully submitted,

This the 9th day of May, 2025.

**TLG Law**

/s/ Benjamin J. Axelman
Benjamin J. Axelman
David G. Redding
2907 Providence Rd. #303
Charlotte, NC 28211
baxelman@tlg-law.com
dredding@tlg-law.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day electronically filed the foregoing **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT VILLAGE OF MARVIN'S MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will serve the same on all counsel of record as follows:

Jake W. Stewart
CRANFILL SUMNER LLP
jstewart@cshlaw.com
*Attorney for Defendants*

This the 9th day of May, 2025.

**TLG LAW**

/s/ Benjamin J. Axelman
_____
Benjamin J. Axelman

# CERTIFICATION REGARDING USE OF ARTIFICIAL INTELLIGENCE

Pursuant to the June 18, 2024 Standing Order of this Court In Re: Use of Artificial Intelligence, 3:24-mc-104, counsel, by signing below, submits the following certification regarding **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT VILLAGE OF MARVIN'S MOTION TO DISMISS**.

1. No artificial intelligence was employed in doing the research for the preparation of the Brief, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and

2. Every statement and every citation to an authority contained in the Brief has been checked by an attorney in this case as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 9th day of May, 2025.

**TLG LAW**

/s/ Benjamin J. Axelman
Benjamin J. Axelman
David G. Redding
2907 Providence Rd. #303
Charlotte, NC 28211
baxelman@tlg-law.com
dredding@tlg-law.com
*Attorneys for Plaintiffs*