UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
WDNC Civil Action No. 3:25-cv-00087

| | | |
|---|---|---|
| CHRIS COMISKEY and VICTORIA COMISKEY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |
| VILLAGE OF MARVIN and KIM VANDENBERG as mayor pro tempore, and KIM VANDENBERG in her individual capacity | ) ) ) ) | |
| Defendants. | | |

This matter is before the Court on Defendant's, Kim Vandenberg, (hereinafter "Defendant or "Ms. Vandenberg") Motion to Dismiss pursuant to Rule 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure. Defendant, by and through her undersigned counsel of record, respectfully submit this Brief in support of her Motion to Dismiss and respectfully request that her Motion be granted.

## NATURE OF THE CASE

Chris Comiskey and Victoria Comiskey ("Plaintiffs" or "Mr. Comiskey" and "Ms. Comiskey") filed a Complaint against Defendants in Union County Superior Court on January 24, 2025. (D.E. 1-1). On February 5, 2025, the Village of Marvin (the "Village") removed the above-captioned action from state court to the United States District Court for the Western District of North Carolina. (D.E. 1). Plaintiffs' Complaint sought damages, injunctive relief and declaratory relief, and alleged six causes of action: (1) Declaratory Relief against both Defendants; (2) Defamation against both Defendants; (3) Intentional Infliction of Emotional Distress against Defendant Vandenberg; (4) Violation of Open Governance Laws against both Defendants; (5)

Violation of First Amendment Rights against both Defendants; and (6) Civil Conspiracy to Violate Plaintiffs' First Amendment Rights against both Defendants. (D.E. 1-1). On February 6, 2025, this Court issued an Order remanding Plaintiffs' Declaratory Judgment action back to state court. (D.E. 2). The Order also instructed the parties to submit their respective positions as to whether the federal claims should be stayed pending judicial resolution of the claims in state court. (*Id.*). Both parties submitted their respective positions as to a stay. (D.E. 7, 8). On March 28, 2025, Plaintiffs filed an Amended Complaint. (D.E. 14). Plaintiffs' Amended Complaint contains claims against Ms. Vandenberg for (1) defamation in her individual capacity, (2) intentional infliction of emotional distress in her individual capacity, (3) violation of open governance laws, (4) violation of First Amendment Rights, and (5) civil conspiracy to violate Plaintiffs' First Amendment Rights. (*Id.*). Defendant now moves to Dismiss Plaintiffs' Amended Complaint as to the causes of action asserted against her.

## STATEMENT OF FACTS

Plaintiffs are husband and wife who live in the Marvin Creek subdivision, located in the Village of Marvin (the "Village"). (D.E. 14 ¶¶ 12-13). In November of 2023, the Marvin Creek HOA purported to grant an easement (the "Easement") to the Village for the purpose of constructing a public trail (the "Public Trail Project"). (*Id.* at ¶¶ 21-22). Plaintiffs allege the HOA covenants, conditions, and restrictions ("CCRs") prohibit the granting of the Easement and that they have the right to restrict such use through their negative easement. (*Id.* at ¶¶ 14, 17-19). In February of 2024, Plaintiffs began to notify both Defendants that the CCRs prohibited the HOA from granting the Easement. (*Id.* at ¶ 24). In response, Plaintiffs allege Ms. Vandenberg, mayor pro tempore, initiated and continued a pattern of behavior and actions calculated to retaliate against and suppress Plaintiffs' objection to the Easement. (*Id.* at ¶ 27).

4920-6972-0648, v. 1

Specifically, Plaintiffs allege Ms. Vandenberg misused the Union County Sheriff's Office to intimidate and discredit Ms. Comiskey for sharing crime information near trails in February and March of 2024. (*Id.* at ¶¶ 28-30). In weeks prior, Ms. Comiskey presented crime data obtained from a Union County Sheriff officer, Detective Trull. (*Id.* at ¶¶ 28-29). It is alleged Ms. Vandenberg and her associates called upon Union County Sheriff officers to appear at subsequent public meetings to rebut and discredit Ms. Comiskey's reporting. (*Id.* at ¶ 32). It is specifically alleged Defendants cajoled Union County Sheriff officers to falsely state there is "no evidence" that criminals who committed break-ins used the wooded trail Defendants intend to connect to the Marvin Creek Easement. (*Id.* at ¶ 34).

Plaintiffs allege Ms. Vandenberg engaged in collusion with the HOA when she received an email from Ms. Comiskey containing the names of homeowners within the HOA who opposed the Public Trail Project and shared that email with an HOA board member. (*Id.*, at ¶¶ 39-43). Plaintiffs allege the email was calculated to assist the HOA board member in thwarting Plaintiffs attempts to stop the Public Trail Project and further Ms. Vandenberg's political agenda. (*Id.* at ¶ 44).

Throughout 2024, Plaintiffs submitted multiple public records requests to the Village related to the Easement and Public Trail Project. (*Id.* at ¶ 45). Plaintiffs allege the Village has failed to provide many of the requested records they are legally obligated to provide. (*Id.* at ¶ 46). Plaintiffs allege upon information and belief that Ms. Vandenberg has influenced the Village to prevent Plaintiff from obtaining the public records requested. (*Id.* at ¶ 47). Specifically, Plaintiffs claim they are entitled to a legal opinion which the Village relied upon in approving the Public Trail Project. (*Id.* at ¶ 48). Plaintiffs allege the legal opinion is not protected by attorney-client privilege because Ms. Vandenberg cited to the opinion in response to questions about the Trail's

4920-6972-0648, v. 1

legality and the Village relied upon the legal opinion in voting to approve the Public Trail Project. (*Id.* at ¶¶ 49-53).

Mr. Comiskey emailed a settlement offer to the undersigned and the Village Council on October 29, 2024. (*Id.* at ¶ 55).  An HOA board member submitted a public records request seeking all emails sent by Mr. Comiskey to the Village between October 28, 2024, and November 1, 2024. (*Id.* at ¶ 57).  Plaintiffs contend this request was done at the behest of Ms. Vandenberg and that the Village fulfilled this request in an expedited manner. (*Id.* at ¶¶ 58-59).  On November 2, 2024, Ms. Vandenberg forwarded the settlement offer from Mr. Comiskey to her husband, who Plaintiffs allege was publicly criticizing their efforts to stop the Public Trail Project. (*Id.* at ¶ 61).  Later that day, Marvin Messenger, a Facebook page, published a portion of the settlement offer and accused Plaintiff of "attempting to use litigation to extort money from the town…" (*Id.* at ¶ 62, and Ex. D). Plaintiffs allege Ms. Vandenberg knew or should have known that forwarding the settlement offer to her husband would result in publication on Facebook and that she forwarded the offer in an attempt to retaliate against Plaintiffs and influence the outcome of the HOA special meeting taking place the following week. (*Id.* at ¶¶ 564-66).

Additionally, Plaintiffs allege that Ms. Vandenburg has orchestrated a campaign to target and harass homeowners who oppose her vision of commercial development and that she has been enforcing an "unwritten VOM policy that "'No' is not an option" (*Id.* at ¶¶ 67-68). Plaintiffs assert that the Defendants' "collective entrenchment in this scheme has driven them to abuse government power, weaponize information, and disregard legal constraints." (*Id.* at ¶¶ 69-70). The Village has communicated with the neighboring Amber Meadows community regarding a proposed public trial, and the Plaintiffs have alleged that such communications have evidenced "retaliatory intent." (*Id.* at ¶ 71). At the public Village Council meeting in December 2024, Council Member Lein

4920-6972-0648, v. 1

discussed the use of eminent domain as to the Public Trail Project. (*Id.* at ¶ 72). The HOA's attorney communicated the Village's conversations of eminent domain to the Marvin Creek HOA, and Plaintiffs contend that the resistance to granting public use easements was "futile to [the Village's] power to forcibly obtain those easements." (*Id.* at ¶ 73). Lastly, Plaintiffs allege that an HOA board member has recognized that the HOA board has "acted out of fear of retaliation from [the Village]." (*Id.* at ¶ 74).

## LEGAL STANDARD

The Plaintiff bears the burden of proving that subject matter jurisdiction exists. *Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (quotation omitted). Indeed, as explained by this Court:

> The moving party should prevail on a motion to dismiss pursuant to a lack of federal jurisdiction if material jurisdictional facts are not in dispute, and the moving party is entitled to prevail as a matter of law. Moreover, on a factual challenge to the court's subject matter jurisdiction, the Court is not limited to the four corners of the Complaint and is free to weigh evidence and determine its power to hear the case.

*Davis v. Am. Airlines*, No. 3:19-CV-44-MOC-DSC, 2019 WL 2719909, at *3 (W.D.N.C. June 28, 2019) (internal citations and quotations omitted), *aff'd sub nom. Davis v. Am. Airlines, Inc.*, 792 F. App'x 265 (4th Cir. 2020), *cert. denied,* 141 S. Ct. 256, 208 L. Ed. 2d 27 (2020).

In order to survive a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, Plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

4920-6972-0648, v. 1

inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Further, a claim must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556-557).

The courts do not accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Doe v. U.S.*, 381 F. Supp. 3d 573, 590 (M.D.N.C. 2019) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). While the Court accepts plausible factual allegations in the complaint as true and considers those facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F. 3d 175, 180 (4th Cir. 2000). A court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted).

"Even though matters outside the pleadings are generally not considered on a Rule 12(b)(6) motion," *see* Fed. R. Civ. P. 12(d); *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), "the court can consider 'documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice' without converting a motion to dismiss into one for summary judgment." *Shore v. Charlotte-Mecklenburg Hosp. Auth.*, 412 F. Supp. 3d 568, 573 (M.D.N.C. 2019) (quoting *Plymouth Cty. Ret. Ass'n v. Primo Water Corp.*, 966 F. Supp. 2d 525, 536 (M.D.N.C. 2013)).

## LEGAL ARGUMENT

### I. Plaintiffs' Official Capacity Claims Against Ms. Vandenberg are Subject to Dismissal.

Official capacity suits are not suits against the person of the defendant, but rather, are suits against the office or entity of which the defendant is an agent. *See Kentucky v. Graham*, 473 U.S.

4920-6972-0648, v. 1

159, 165 (1985); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). An official

capacity claim is, therefore, actually nothing more than a claim against the governmental entity by

whom the official is employed.  *Kentucky,* 473 U.S. 159 at 165-67 (noting that official capacity

suits "generally represent only another way of pleading an action against an entity of which an

officer is an agent.").

The Fourth Circuit has held that when a governmental employee is sued in his or her official

capacity, the claim is actually against the governmental office that the employee holds, rather than

the particular individual occupying the office. *Brissett v. Paul*, 141 F.3d 1157 (4th Cir. 1998)

(upholding dismissal of claims against Defendants in their official capacities as Chiefs of Police,

because local government that employed them was named as a party and therefore naming the

local officials in their official capacities was redundant and unnecessary); *See also Armstrong v.

City of Greensboro*, 190 F.Supp.3d 450, 463 (2016) ("[D]uplicative claims against an individual

in his official capacity when the government entity is also sued may be dismissed.").

Here, Plaintiff has simultaneously alleged claims against Ms. Vandenberg in their official

capacity and claims against the Village, whom she is a public official for.  The claims against

Ms. Vandenberg in her official capacity are redundant and unnecessary and are subject to

dismissal with prejudice.

## II.     <u>Plaintiffs' Defamation Claim is Subject to Dismissal.</u>

Plaintiffs allege Defendants are liable for defamation based upon a Facebook post from

"Marvin Messenger." (D.E. 14, ¶¶ 87-103).   Specifically, Plaintiffs allege Ms. Vandenberg

provided Mr. Comiskey's settlement demand[1] to her husband and then someone posted the demand

---

[1] Mr. Comiskey made his settlement demand a public record when he sent it to the Village Council. (D.E. 14, ¶ 55).

4920-6972-0648, v. 1

on Facebook with a comment that stated the demand was an attempt to use litigation to extort money from the Village. (D.E. 14, ¶¶ 90-93, and Ex. D).

Plaintiffs have not identified any allegedly defamatory comments made by Defendants. Instead, Plaintiffs purport to hold Defendants liable for a social media post from an unknown, unidentified individual who posts under the name Marvin Messenger on the basis that this individual was acting as an agent of Ms. Vandenberg. (D.E. 14, ¶ 99). Such allegations are speculative and conclusory and insufficient to attach liability to Ms. Vandenberg. Plaintiffs' only basis to support their allegations that the individual who posted on social media is an agent of Ms. Vandenberg is the fact that she shared Plaintiffs' settlement demand (a public record) with her husband. (D.E. 14, ¶ 90). Plaintiffs have not identified any communication between Defendants and the individual who posted on Facebook, any relationship between them, or even the identity of Marvin Messenger. Even if Ms. Vandenberg provided the settlement demand to her husband who then provided the demand to the individual who posted on Facebook, Plaintiffs have failed to allege facts that would lead a reasonable fact finder to believe Ms. Vandenberg knew or should have known that providing the demand to her husband would result in a third-party making comments about Plaintiffs on social media.

Plaintiffs' Amended Complaint must "contain more than 'labels and conclusions'; it must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 352 (4th Cir. 2013) (quoting *Twombly,* 550 U.S. at 570). Here, Plaintiffs' allegations are not sufficient to state a plausible claim to relief. *Iqbal*, 556 U.S. at 678. Although it may not be possible to determine whether the alleged communications occurred between Ms. Vandenburg and the individual who posted on Facebook until discovery ensues, at this stage, Plaintiffs have not met their burden to plead that their agency theory is plausible.

4920-6972-0648, v. 1

### a.  The Post Identified does not Constitute Defamation.

The first three elements of a defamation claim are that the statement(s) were (1) false, (2) defamatory, and (3) of or concerning Plaintiffs. *Boyce & Isley, PLLC v. Cooper*, 153 N.C.App. 25, 29, 568 S.E.2d 893, 897 (2002).  If a statement "cannot 'reasonably [be] interpreted as stating actual facts' about an individual" it cannot be the subject of a defamation suit. *Daniels v. Metro Magazine Holding Co., LLC*, 179 N.C.App. 533, 539, 634 S.E.2d 586, 590 (2006) (quoting *Hustler Magazine v. Falwell*, 485 U.S. 46, 50, 108 S.Ct. 876, 879, 99 L.Ed.2d 41, 48 (1988)).  When considering whether a statement could reasonably be interpreted as stating an actual fact about an individual, "courts look to circumstances in which the statement is made." *Daniels*, 179 N.C.App. at 539, 634 S.E.2d at 590 (citing *Milkovich v. Lorain Jornal Co.*, 497 U.S. 1, 21, 110 S.Ct. 2695, 2707, 111 L.Ed.2d 1, 19 (1990)).  The *Daniels* Court explained "[s]specifically, we consider whether the language used is 'loose, figurative, or hyperbolic language,' as well as the 'general tenor of the article.'" *Id.* at 540, 634 S.E.2d at 590 (quoting *Milkovich*, 497 U.S. at 21, 110 S.Ct. at 2707).

When determining whether an individual makes a defamatory statement, courts have looked to whether the statement could be interpreted as stating a fact about someone. *Daniels,* 179 N.C.App. at 539, 634 S.E.2d at 590; *Hustler Magazine,* 485 U.S. at 50, 108 S.Ctat 879.  For a statement to be defamatory, it must be a statement of fact, not opinion. *Lewis v. Rapp*, 220 N.C.App. 299, 306, 725 S.E.2d 597, 603 (2012).  The social media post in this claim does not state facts about Plaintiffs, rather Mr. Comiskey's actions regarding potential litigation are being criticized.  North Carolina courts have "held consistently that alleged false statements made by defendant, calling plaintiff 'dishonest' or charging that plaintiff was untruthful and an unreliable employee, are not actionable *per se*." *Tallent v. Blake*, 57 N.C.App. 249, 253, 291 S.E.2d 336, 339-40 (1982).

4920-6972-0648, v. 1

Accusing Mr. Comiskey of attempting to use litigation to "extort money from the town or to pressure local government into meeting personal demands" while attaching a copy of Mr. Comiskey's settlement demand is not a statement of fact, but an opinion. When "the bases for the … conclusion are fully disclosed, no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related." *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 185 (4th Cir. 1998) (quoting *Chapin v. Knight-Ridder, Inc.*, 993, F.2d 1087, 1093 (4th Cir. 1993)); *see also Standing Comm. On Discipline v. Yagman,* 55 F.3d 1430, 1439 (9th Cir. 1995) ("A statement of opinion based on fully disclosed facts can be punished only if the stated facts are themselves false and demeaning."); *Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 730-31 (1st Cir. 1992) (when a statement provides factual bases for its conclusion, it is a "personal conclusion" rather than a statement of fact subject to a defamation claim).

Here, the statement in question is a social media post commenting on Mr. Comiskey's settlement demand. (D.E. 14, Ex. D). The settlement demand is attached to the post, which forms the basis for the author of the post's opinion. For example, the post provides: "This person seeks to influence Marvin's decisions for personal gain…" (*Id.*). Such comment was made in response to Mr. Comiskey's settlement demand and is a pure statement of opinion. Plaintiffs allege that the author of the post "misrepresented the contents of the Settlement Offer." (D.E. 14, ¶ 62). However, the author's post regarding the contents of the Settlement Offer cannot be deemed more than an opinion because the Settlement Offer itself was attached to the post, which allowed for the viewers to have access to the basis for the author's opinion and determine for themselves the motive behind Plaintiffs actions. Therefore, this case is analogous with those where an individual expresses a conclusion based upon facts that are disclosed. See *Greenbelt Cooperative Publishing Assn., Inc. v. Bresler,* 398 U.S. 6, 13-14, 90 S.Ct. 1537, 1541-42, 26 L.Ed.2d 6 (1970) (the Court noted that

where reports were accurate and full, "even the most careless reader must have perceived that the word [blackmail] was no more than rhetorical hyperbole, a vigorous epithet used by those who considered [the developer's] negotiating position extremely unreasonable.").

### b. Ms. Vandenberg did not make any Defamatory Comments.

Presumably, Plaintiffs intend to implicate Ms. Vandenberg in the alleged defamatory statements through a theory of *respondeat superior*. Even if there was an underlying tort of defamation, which there is not, respondeat superior liability cannot attach. "As a general rule, liability of a principal for the torts of its agent may arise in three situations: (1) when the agent's act is expressly authorized by the principal; (2) when the agent's act is committed within the scope of his employment and in furtherance of the principal's business[;] or (3) when the agent's act is ratified by the principal." *Matthews v. Food Lion, LLC,* 205 N.C.App. 279, 281-82, 695 S.E.2d 828, 830 (2010).

Plaintiffs' Amended Complaint contains no allegations that Ms. Vandenberg expressly authorized the unnamed and unknown individual who posted on the Marvin Messenger Facebook page. Moreover, there is no allegation that the unnamed and unknown individual was in any way an employee or in the employ of Ms. Vandenberg. Finally, Plaintiffs have failed to allege Ms. Vandenberg in any way ratified the post. Plaintiffs instead point to Ms. Vandenberg providing a public record to her husband and a Facebook post going up as evidence of her involvement in that post. Without further allegations of fact, Plaintiffs' claims of any agency relationship is conjecture and speculation. Plaintiffs have not even alleged Ms. Vandenberg had any direct contact with the unknown individual who posted on social media. The allegation that the Facebook post was a direct and foreseeable result of Ms Vandenberg sending her husband a settlement demand is unsupported by the Amended Complaint.

### c. Ms. Comiskey has no Claim for Defamation.

4920-6972-0648, v. 1

Any defamation claim by Ms. Comiskey must be dismissed as the Facebook post does not identify her in any capacity so it is unclear how anyone could conclude the post is referencing her. In fact, the post specifically references "an individual" and "[t]his person." (D.E. 14, Ex. D). The allegedly defamatory statements made by Marvin Messenger were made in reference to an individual, not to the entire Comiskey family. (*Id.*).

### III. Plaintiffs Have Failed to State a Claim for Intentional Infliction of Emotional Distress.

"In an action for intentional infliction of emotional distress ("IIED"), the essential elements are '1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress.'" *Wagoner v. Elkin City Sch. Bd. of Educ.*, 113 N.C. App. 579, 586, 440 S.E.2d 119, 123 (1994). North Carolina's courts place a heavy burden on plaintiffs attempting to establish extreme and outrageous conduct. To sustain a claim, a plaintiff must allege and prove much more than he or she was treated in an unpleasant manner. Instead, a plaintiff must allege and prove truly outrageous conduct:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice" or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

*Hardin v. Champion Int'l Corp.*, 685 F. Supp. 527, 531 (W.D.N.C. 1987). *See also, e.g., Wilson v. Bellamy*, 105 N.C. App. 446, 414 S.E.2d 347 (1992) (evidence of "a sexual battery, standing alone" did not constitute the required extreme and outrageous conduct to support a claim of IIED). Courts have "set a high threshold for a finding that conduct meets the standard of extreme and outrageous conduct[,]" *Chidnese v. Chidnese*, 210 N.C.App. 299, 317, (2011), which "is defined as conduct that is so outrageous in character, and so extreme in degree, as to

4920-6972-0648, v. 1

go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Norton v. Scotland Mem'l Hosp., Inc.*, 250 N.C.App. 392, 397 (2016) (internal quotation marks and citation omitted). For example, liability does not extend "to mere insult, indignities, [and] threats . . . [as] plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate or unkind." *Briggs v. Rosenthal*, 73 N.C.App. 672, 677 (1985) (quoting Restatement (Second) of Torts, § 46 (cmt. (d) (1965)).

In their Amended Complaint, Plaintiffs cite to a number of actions by Ms. Vandenberg which they contend constitute extreme and outrageous conduct. Plaintiffs allege Ms. Vandenberg used her position to influence the Village to prevent Plaintiffs from obtaining public records they were entitled to while assisting the Village to expedite production of public records to a Board member whose position was adverse to Plaintiffs. Plaintiffs next allege Ms. Vandenberg caused Plaintiffs to be accused of extortion when she provided a public record to her husband and a third party posted their opinion on social media. Finally, Plaintiffs allege Ms. Vandenberg attempted to discredit and intimidate Plaintiffs through the Union County Sheriff's Office. Each of these allegations involve an entity other than Ms. Vandenberg allegedly infringing upon Plaintiffs' rights, but Plaintiffs contend Ms. Vandenberg is responsible for it all. Even if Ms. Vandenberg were responsible for all the actions alleged by Plaintiffs, the actions alleged are neither extreme nor outrageous. Using a law enforcement agency to present crime data, sending a public record to a spouse, and responding to one public record request faster than another hardly constitute extreme or outrageous conduct.

Further, there is no severe emotional distress present. "Severe emotional distress" is defined as "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic

4920-6972-0648, v. 1

depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Johnson v. Ruark Obstetrics & Gynecology Assoc., P.A.*, 327 N.C. 283, 304 (1990). Where the alleged conduct of a Defendant "has caused a plaintiff to suffer mere fright or temporary anxiety not amounting to severe emotional distress, the plaintiff may not recover damages for his fright and anxiety on a claim for infliction of emotional distress." *Johnson*, 327 N.C. at 303-04. Here, Plaintiffs have merely claimed the existence of severe emotional distress. The courts do not accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Doe v. U.S.*, 381 F. Supp. 3d 573, 590 (M.D.N.C. 2019) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

IV. **Ms. Vandenberg is Entitled to Public Official Immunity.**

In the alternative, Plaintiffs' defamation claim is barred by public official immunity. The essence of the doctrine of public official immunity is that public officials engaged in the performance of their governmental duties involving the exercise of judgment and discretion, and acting within the scope of their authority, may not be held liable for such actions, in the absence of malice or corruption. *Price v. Davis*, 132 N.C. App. 556, 562, 512 S.E.2d 783, 787 (1999) (citation omitted); *Meyer v. Walls*, 347 N.C. 97, 489 S.E.2d 880 (1997). "A public official can only be held individually liable for damages when the conduct complained of is malicious, corrupt, or outside the scope of official authority." *Hunter v. Transylvania Cty. Dep't of Soc. Servs.*, 207 N.C. App. 735, 737, 701 S.E.2d 344, 346 (2010).

While Plaintiffs' Amended Complaint contains an allegation Ms. Vandenberg was acting outside the scope of her duties in "causing the defamation", Plaintiffs have pled Ms. Vandenberg was serving as mayor pro tempore for the Village at all times relative to the matters set forth in the Amended Complaint. (D.E. 14, ¶ 5). In addition, the basis for Plaintiffs' defamation claim

against Ms. Vandenberg is her providing a public record sent to her in her capacity as mayor pro tempore.  (D.E. 14, ¶ 55).

Plaintiffs allege Ms. Vandenberg's actions were done wantonly and recklessly, but they fail to allege facts to support that contention.  Those are merely conclusory allegations, and a conclusory allegation that a public official acted with malice is not sufficient, by itself, to withstand a motion to dismiss. *Doe v. Wake Cty.*, 264 N.C. App. 692, 695-96, 826 S.E.2d 815, 819 (2019).  "The facts alleged in the complaint must support such a conclusion." *Meyer v. Walls*, 347 N.C. 97, 114, 489 S.E.2d 880, 890 (1997).  It is also unclear how providing a public record to a spouse could constitute a malicious act.  Since Plaintiffs have failed to allege the existence of malice or corruption on behalf of Ms. Vandenberg, the defamation claim against Ms. Vandenberg is barred by public official immunity.

## V.   Plaintiffs' Have Failed to State a Claim for Violation of Open Governance Laws.

The claim against Ms. Vandenberg for violating open governance laws should be dismissed for the same reasons noted in the Village's Motion to Dismiss Brief and Reply Brief.  (D.E. 17 p. 7-10; D.E. 22 p. 1-4).  Ms. Vandenberg adopts the arguments contained in the Village's briefing on the alleged open governance violations.

Furthermore, Plaintiffs' Amended Complaint fails to state a claim against Ms. Vandenberg specifically for violating open governance laws.  In this cause of action, Plaintiffs' allege the Village improperly delayed responses to Plaintiffs' requests, imposed unreasonable review timelines, and improperly invoked attorney-client privilege to shield critical information. (D.E. 14, ¶ 123).  Plaintiffs do not allege Ms. Vandenberg is responsible for any of those allegedly improper actions, except for withholding an attorney opinion.  Plaintiffs do allege Ms. Vandenberg shared the "Political Adversary Email" to a Board Member. (D.E. 14, ¶ 121).  It is unclear if Plaintiffs are alleging the disclosure of the email constituted a violation of open

governance laws. This email was provided to Ms. Vandenberg by Ms. Comiskey, a Plaintiff, to show who opposes the construction of a public trail. (D.E. 14, ¶¶ 40-41). Ms. Comiskey made this document a public record when she emailed it to Ms. Vandenberg.[2] To the extent Plaintiffs are arguing a public record cannot be reproduced to members of the public is inappropriate.

**VI.**      **Plaintiffs' Claim for First Amendment Violations is Subject to Dismissal.**

Plaintiffs allege four ways in which their first amended rights were violated: (1) responding quicker to public records requests of other citizens than Plaintiffs; (2) postponing or refusing to respond to Plaintiffs' lawful requests for records; (3) publishing the settlement offer sent to Village Council; and (4) calling law enforcement to attend meetings in an effort to discredit and intimidate Plaintiffs from engaging in further political speech. (D.E. 14, ¶ 135).

While the law prohibits government officials from engaging in retaliatory acts in response to speech in fear of a chilling effect, "not every reaction made in response to an individual's exercise of his First Amendment right to free speech is actionable retaliation." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000) (*quoting DiMeglio v. Haines,* 45 F.3d 790, 806 (4th Cir.1995); *ACLU v. Wicomico County, Md.,* 999 F.2d 780, 785 (4th Cir. 1993) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights."). In a § 1983 retaliation claim plaintiff must demonstrate that the defendant's actions had some adverse impact on the exercise of the plaintiff's constitutional rights. *Suarez Corp. Indus.*, 202 F.3d at 685; *Wicomico County,* 999 F.2d at 785. In respect to showing the retaliatory action adversely affected the Plaintiffs constitutionally protected speech, Plaintiffs must show the

---

[2] Documents exchanged with a public official constitute a public record when it is related to the transaction of public business. N.C.G.S. § 132-1(a); see *Gray Media Group Inc. v. City of Charlotte through City Council*, 290 N.C.App. 384, 892 S.E.2d 629 (Ct.App. 2023) (emails between a third party vendor and City were considered public record).

conduct "would deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005).

Here, Plaintiffs have failed to sufficiently allege a First Amendment retaliation claim to establish an adverse impact on their constitutional rights. Instead, Plaintiffs have merely alleged in a conclusory fashion that the actions complained of, chilled them from continuing to engage in their First Amendment rights. No specific allegations supporting their conclusory claims are included. Plaintiffs have not alleged they have ceased or refrained from continuing to submit public records requests, that they have stopped voicing their respective opinions about the Public Trail project, or that they no longer speak about concerns about public trails. Plaintiffs' First Amendment rights have not been affected in any capacity, which is unsurprising since the actions alleged would not deter a person of ordinary firmness from exercising their First Amendment rights.

As noted in the Village's briefing, Plaintiffs' allegations surrounding their public records requests are incredibly vague and do not allow the Court or Defendants to effectively analyze whether any deficiencies in responding to public records requests are reasonable. The extent and number of requests submitted would certainly dictate how reasonable the response time or responses are. Without more information, simply responding to a request faster from one citizen than another would not deter an ordinary person from engaging in further First Amendment activities, and it has not done so here. The First Amendment does not guarantee citizens the right to receive responses to their public records requests faster than others or on a timeline that they desire.

4920-6972-0648, v. 1

Plaintiffs claim that Ms. Vandenberg cajoled Union County Sheriff deputies into falsely stating crime statistics during these public meetings, thus creating a "chilling effect upon Plaintiffs' exercise of their free speech." (*Id.*, ¶¶ 33-36). "[W]hen a private citizen is a speaker and a public official is the retaliator" the "nature of the retaliatory acts impacts whether those acts are actionable." *Suarez*, 202 F.3d at 686. Retaliation could be justified "when legitimate countervailing government interests are sufficiently strong" to override the private interest in the action. *Bd. of Cty. Comm'rs v. Umbehr*, 518 U.S. 668, 675, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996). Certainly, a municipality has a legitimate government interest in ensuring citizens are receiving accurate information about crime in the community. Defendants' decision to call on Sheriff's deputies to present crime statistics is a reasonable means to accomplish that goal. Plaintiffs' interest in preventing a Public Trail from being built does not outweigh the Defendants' interest in ensuring citizens receive information about crime from law enforcement.

Clearly, Plaintiffs believe the information they presented during public meetings was correct and the information presented by Union County Sheriff deputies was incorrect, however, it is unclear how Plaintiffs' belief that law enforcement provided them incorrect information constitutes a deprivation of their First Amendment Rights by Ms. Vandenberg. Plaintiffs' allegations that Ms. Vandenberg was able to convince sworn law enforcement officers to lie to the public about crime statistics in an effort to stifle their First Amendment rights is not plausible nor supported by anything more than speculation. The Supreme Court has limited retaliation liability when the challenged government action is so pervasive and universal that allowing a claimant to proceed would "plant the seed of a constitutional case" in "virtually every" interchange. See *Connick v. Myers,* 461 U.S. 138, 148-49, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Allowing Plaintiffs claim to proceed would result in citizens asserting First Amendment

violations anytime a governmental entity disagreed with them by simply alleging the entity attempted to discredit them by making false statements contradictory to their own.

Finally, holding that a public official who releases a public record is responsible for a First Amendment Constitutional violation when a third-party comments on that public record would create a dangerous precedent which would result in the flooding of the court system with frivolous claims. Plaintiffs should not be able to effectively create their own First Amendment cause of action by deciding to create a public record then claiming their First Amendment Rights are being chilled when that public record is shared.

**VII.** **Ms. Vandenberg is Entitled to Qualified Immunity.**

Even if Ms. Vandenberg violated Plaintiffs constitutional rights, which she did not, Plaintiffs' claims are barred by qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Officials who are sued for civil damages are entitled to qualified immunity unless (1) the complaint sufficiently alleges a violation of a constitutional right, and (2) the right at issue, defined at the appropriate level of generality, was "clearly established" at the time of the alleged misconduct. *Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs.*, 597 F.3d 163, 169 (4th Cir. 2010). The right at issue must be defined with specificity. *City of Escondido, Cal v. Emmons,* ---U.S.----, 139 S.Ct. 500, 503, 202 L.Ed.2d 455 (2019).

Qualified immunity "gives ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). "Officials are not liable for bad guesses in

4920-6972-0648, v. 1

gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

In the First Amendment retaliation setting, Defendant is unaware of any Fourth Circuit case where the Court has ruled that a Plaintiff has a clearly established right to dictate timelines and responsiveness to public records requests. Nor is Defendant aware of any Fourth Circuit case where the Court has ruled a public official violates a private citizen's First Amendment Right when the public official discloses a public record created by the private citizen. Finally, Defendant is not aware of any Fourth Circuit case where the Court has ruled a citizen has a clearly established First Amendment right to present purported crime statistics without law enforcement thereafter presenting their own statistics. As such, Plaintiffs' First Amendment claims against Ms. Vandenberg are barred by qualified immunity.

**VIII.   Plaintiff's Civil Conspiracy Claim is Subject to Dismissal.**

The civil conspiracy claim under §1983 against Ms. Vandenberg should be dismissed for the same reasons noted in the Village's Motion to Dismiss Brief and Reply Brief. (D.E. 17 p. 14-17; D.E. 22 p. 6-9). Ms. Vandenberg adopts the arguments contained in the Village's briefing on the alleged civil conspiracy claim under §1983. For the reasons noted above, Plaintiffs have failed to state a First Amendment claim against Ms. Vandenberg, so for that reason their civil conspiracy claim must similarly fail. See *Nance v. City of Albemarle, North Carolina*, 520 F.Supp.3d 758, 801 (M.D.N.C. 2021) (Court dismissed a claim for § 1983 civil conspiracy where Plaintiffs "failed to plausibly allege" constitutional deprivations).

**IX.   Ms. Vandenberg is Entitled to Legislative Immunity.**

All of Plaintiffs' claims against Ms. Vandenberg are barred by legislative immunity.

It is well settled that local legislators, including city council members, "are entitled to the same absolute immunity from civil liability under § 1983 for their legislative activities as has long been

accorded to federal, state, and regional legislators." *See Bogan v. Scott-Harris*, 523 U.S. 44, 44, 118 S. Ct. 966, 967–68, 140 L. Ed. 2d 79 (1998)(citing *Tenney v. Brandhove*, 341 U.S. 367, 372, 372–376, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). As the Fourth Circuit has explained:

> In *Tenney v. Brandhove,* 341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951), the Supreme Court held that state legislators were cloaked with absolute immunity for their legislative actions, and the Court extended that protection to members of a regional political subdivision in *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 405, 99 S.Ct. 1171, 1179, 59 L.Ed.2d 401 (1979). We analogously applied principles of legislative immunity to members of a county council in *Bruce v. Riddle,* 631 F.2d 272, 279 (4th Cir. 1980). As we summarized in *Bruce,* 'if legislators of any political subdivision of a state function in a legislative capacity, they are absolutely immune from being sued under the provisions of § 1983.' *Id.*

*Whitener v. McWatters*, 112 F.3d 740, 742 (4th Cir. 1997).

The rationales for according absolute immunity to federal, state, and regional legislators apply with equal force to local legislators. Regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability. See *Spallone v. United States,* 493 U.S. 265, 279, 110 S.Ct. 625, 634, 107 L.Ed.2d 644 (1990) (noting, in the context of addressing local legislative action, that "any restriction on a legislator's freedom undermines the 'public good' by interfering with the rights of the people to representation in the democratic process"). Furthermore, the time and energy required to defend against a lawsuit are of particular concern at the local level, where the part-time citizen-legislator remains commonplace. See *Tenney, supra,* at 377, 71 S.Ct., at 788–89 (citing "the cost and inconvenience and distractions of a trial"). And the threat of liability may significantly deter service in local government, where prestige and pecuniary rewards may pale in comparison to the threat of civil liability. See *Harlow v. Fitzgerald,* 457 U.S. 800, 816, 102 S.Ct. 2727, 2737.

According to the Fourth Circuit Court of Appeals, legislative immunity's practical import is difficult to overstate. As members of the most representative branch, legislators bear significant

4920-6972-0648, v. 1

responsibility for many of our toughest decisions, from the content of the laws that will shape our society to the size, structure, and staffing of the executive and administrative bodies carrying them out. *See E.E.O.C. v. Washington Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011). This immunity also shields legislators from political wars of attrition in which their opponents try to defeat them through litigation rather than at the ballot box. *Id.* "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54, 118 S.Ct. at 973. "Individuals, including county commissioners and city council members, are entitled to absolute legislative immunity for 'all actions taken "in the sphere of legitimate legislative activity.'"" *Northfield Development Co., Inc. v. City of Burlington*, 136 N.C.App. 272, 281, 523 S.E.2d 743, 749 (Ct.App. 2000) quoting *Bogan*, 523 U.S. at 54, 118 S.Ct. at 972.

Plaintiffs' claims against Ms. Vandenberg all revolve around allegations of her pursuit of "commercial development and interconnected public trails that intrude directly into private residential areas." (D.E. 14, ¶ 67). Plaintiffs presumably attempt to avoid implicating Ms. Vandenberg's legislative immunity by claiming her actions were done outside the scope of her authority as a public official, however, the allegations all arise out of her legislative decisions.

In *Providence Volunteer Fire Department, Inc. v. Town of Weddington*, the North Carolina Supreme Court held that "legislative immunity is a recognized bar to claims against North Carolina public officials." 382 N.C. 199, 220, 876 S.E.2d 453, 467 (2022). In *Providence*, the Court held that a Mayor's actions in calling a town meeting and setting the agenda for that meeting constituted legislative action, which entitled the mayor to legislative immunity. *Id.* 382 N.C. at 221, 876 S.E.2d at 467. In this matter, Plaintiffs allege Ms. Vandenberg's actions in calling speakers at a public meeting constitute the basis for various causes of action. Similar to *Providence*, Ms. Vandenberg's

alleged actions in setting the agenda for a public meeting or assisting in securing speakers for a public meeting should be deemed a legislative action, thus entitling her to legislative immunity shielding her from any alleged causes of action arising from that act. The Defendants' decisions and actions surrounding how to respond to public records requests and responding to public records requests is also legislative in nature as it is a governmental policy that impacts the entire community. See *Alexander v. Holden,* 66 F.3d 62, 66 (4th Cir. 1995) (citation omitted) (an action is legislative if it involves " 'generalizations concerning a policy or state of affairs' and the 'establishment of a general policy' affecting the larger population").

Finally, to the extent Plaintiffs intend to seek any liability against Ms. Vandenberg for her decision or involvement in voting to approve the Public Trail, her actions in approving the Public Trail are similarly protected by legislative immunity. See *Bogan,* 523 U.S. at 55, 118 S.Ct. at 973, (where the Court held that voting for an ordinance and introducing a budget were both formally legislative and entitled officials to legislative immunity); *Kensington Volunteer Fire Dept., Inc. v. Montgomery County, Md.*, 684 F.3d 462, 467-68 (4th Cir. 2012) (Court will not inquire into alleged illicit legislative motive behind a municipality's facially valid legislative action).

## CONCLUSION

For the foregoing reasons, the Village respectfully requests that their Motion to Dismiss Plaintiffs' Amended Complaint be GRANTED, and that Plaintiffs' claims against them be DISMISSED WITH PREJUDICE.

This the 3rd day of June 2025.

CRANFILL SUMNER LLP

BY: */s/Jake W. Stewart*
Jake W. Stewart, NC Bar # 51157
*Attorney for Defendants*
P.O. Box 30787

Charlotte, NC 28230
Telephone (704) 332-8300
Facsimile (704) 332-9994
jstewart@cshlaw.com

4920-6972-0648, v. 1

## CERTIFICATION REGARDING USE OF ARTIFICIAL INTELLIGENCE

Pursuant to the June 18, 2024 Standing Order of this Court In Re: Use of Artificial Intelligence, 3:24-mc-104, counsel, by signing above, submits the following certification regarding Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss.

1. No artificial intelligence was employed in doing the research for the preparation of this Memorandum, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg, as well as Google and Google Scholar;

2. Every statement and every citation to an authority contained in this Memorandum has been checked by the undersigned as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 3rd day of June 2025.

CRANFILL SUMNER LLP

BY:     /s/Jake W. Stewart
        Jake W. Stewart, NC Bar # 51157
        *Attorney for Defendants*
        P.O. Box 30787
        Charlotte, NC 28230
        Telephone (704) 332-8300
        Facsimile (704) 332-9994
        jstewart@cshlaw.com

4920-6972-0648, v. 1

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that the undersigned has this day electronically filed the foregoing **MOTION TO DISMISS IN LIEU OF AN ANSWER,** with the Clerk of Court using the CM/ECF system serving the same on all parties as follows:

Benjamin J. Axelman
David G. Redding
TLG Law
2907 Providence Road, Suite 303
Charlotte, NC 28211
Telephone: (704) 612-2128
Facsimile: (704) 626-6552
baxelman@tlg-law.com
dredding@tlg-law.com
*Attorneys for Plaintiffs*

This the 3rd day of June, 2025.

CRANFILL SUMNER LLP

BY:     /s/*Jake W. Stewart*_____
Jake W. Stewart, NC Bar #51157
Attorney for Defendants
P.O. Box 30787
Charlotte, NC 28230
Telephone (704) 332-8300
Facsimile (704) 332-9994
jstewart@cshlaw.com

4920-6972-0648, v. 1