**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:25-CV-00087-KDB-DCK**

| | |
|---|---|
| CHRIS COMISKEY and VICTORIA COMISKEY,<br><br>     *Plaintiffs*,<br><br>v.<br><br>VILLAGE OF MARVIN and KIM VANDENBERG as mayor pro tempore, and KIM VANDENBERG in her individual capacity,<br><br>     *Defendants.* | **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT KIM VANDENBERG'S MOTION TO DISMISS** |

NOW COME Plaintiffs, by and through counsel, respectfully submitting their Memorandum of Law in Opposition to Defendant Kim Vandenberg's Motion to Dismiss.

## FACTUAL BACKGROUND

Plaintiffs Chris Comiskey ("Mr. Comiskey") and Victoria Comiskey ("Ms. Comiskey") are residents and homeowners in the Marvin Creek subdivision in the Village of Marvin ("VOM"), an incorporated municipality in Union County, North Carolina. Amended Compl., ECF 14, ¶¶ 1-3, 12-13. Defendant Kim Vandenberg ("Ms. Vandenberg") is the mayor pro tempore of VOM. *Id.* at ¶ 5. In late 2023, the Marvin Creek homeowners association (the "HOA") purported to grant an easement (the "Easement") to VOM for the purpose of constructing a public trail (the "Public Trail Project") through the woods next to Plaintiffs' home, on property which is owned by the HOA (the "HOA Private Property"). *Id.* at ¶¶ 21-22.

Plaintiffs, along with a plethora of their neighbors, have vehemently opposed the legality of the Easement and of the Public Trail Project. *See, e.g., id.* at ¶ 40-41. In response to Plaintiffs'

1

outspoken objections to the legality of the Easement, Plaintiffs allege that Defendants have engaged in systematic, concerted and joint efforts to suppress Plaintiffs' freedom of speech and to retaliate against them. *See, e.g., id.* at ¶ 32, 67-73.

Plaintiffs initially filed this action against Defendants in the courts of Union County, North Carolina (the "State Court") on January 24, 2025. ECF 1, p. 1. On February 5, 2025, Defendants removed the action to this Court. *Id.* On February 6, 2025, this Court remanded Plaintiffs' state land use claims back to the State Court, but retained jurisdiction over Plaintiffs' legal claims pursuant to 28 U.S.C. §§ 1331 and 1367. ECF 2. On February 10, 2025, the State Court granted a temporary restraining order in favor of Plaintiffs, enjoining Defendants from construction upon the Easement, and such restraining order is still in force. Defendants have each individually moved to dismiss the State Court action, and both such motions remain to be adjudicated.

As to the claims which remain before this Court, Plaintiffs allege Defendants have (1) engaged in defamation; (2) intentionally inflicted emotional distress upon Plaintiffs; (3) violated North Carolina's laws regarding open and transparent governance; and (4) engaged in a conspiracy for the purpose of (5) violating Plaintiffs' rights under the First Amendment of the United States Constitution. ECF 14, pp. 9-14.

Plaintiffs allege that the covenants, conditions, and restrictions (CCRs) which govern Marvin Creek clearly prohibit the HOA from granting easements for public use, and by extension, grant to each of the homeowners a negative easement right to prevent the dedication of HOA Private Property for public use. *Id.* at ¶¶ 16-19. In February 2024, Plaintiffs notified Defendants that the Easement was invalidly granted by the HOA because the purported granting of the Easement violated the CCRs, thus the Easement was illegal and void. *Id.* at ¶ 24.

In the time since Defendants were first notified of Plaintiffs' position on the matter, Plaintiffs allege in detail that Defendants have engaged in a concerted and purposeful campaign to silence opponents of the Public Trail Project by, *inter alia*, abusing governmental powers, violating governmental transparency laws, intimidating Plaintiffs and others using proxies and agents, improperly meddling in HOA affairs and colluding with the HOA against Plaintiffs, and directing and/or assisting with defamation *per se* which was intended to harm Plaintiffs. *See, e.g., id.* at ¶¶ 21, 38, 41, 53, 59, 79, 85. On April 11, 2025, VOM filed a motion to dismiss those of Plaintiffs' claims which remain before this Court, ECF 16, and such motion remains to be heard. On June 3, 2025, Ms. Vandenberg likewise filed a motion to dismiss in this Court, ECF 24, arguing that Plaintiffs' Amended Complaint against her should be dismissed pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6), and to which this Memorandum now responds.

## STANDARD OF REVIEW

A cause of action should not be dismissed under Federal Rule of Civil Procedure 12(b)(6) unless, with all evidence viewed in the light most favorable to the plaintiff and with the plaintiff's allegations taken as true, *see Christopher v. Harbury*, 536 U.S. 403 (2002), the court cannot draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

"Factual allegations must be enough to raise a right to relief above the speculative level *on the assumption that all of the complaint's allegations are true*." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (emphasis added). The "plausibility" standard requires that a complainant plead "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the underlying facts of a claim. *Id.* "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the

3

assumption of truth." *Iqbal*, 556 U.S. at 664 (2009). Legal conclusions in a complaint must be supported by factual allegations. *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

## ARGUMENT

I. **Ms. Vandenberg's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) should be denied, as no argument regarding personal jurisdiction is actually raised.**

Ms. Vandenberg requests in her motion that Plaintiffs' Complaint against her be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, but she does not argue at all as to why this Court lacks personal jurisdiction over her, and could not so argue; Ms. Vandenberg is fully a citizen and resident of North Carolina, and does not deny this fact nor that she has been properly served with process. As a result, Ms. Vandenberg's motion to dismiss pursuant to Rule 12(b)(2) should be summarily denied.

II. **Ms. Vandenberg's actions are not protected by any form of immunity, and this Court has subject matter jurisdiction to adjudicate this case.**

It is a little unclear as to what basis upon which Ms. Vandenberg specifically challenges subject matter jurisdiction, and Plaintiffs thus infer that the basis for the challenge is that governmental or some other form of immunity divests this Court of jurisdiction to adjudicate some or all of Plaintiffs' claims.

A. **Ms. Vandenberg, as the party raising the defense of immunity, bears the burden of proving a lack of subject matter jurisdiction on that basis.**

Typically, the burden of establishing subject matter jurisdiction rests with the plaintiff. *Demetres v. E. W. Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015). However, where a district court otherwise possesses subject matter jurisdiction to hear a case and the only challenge to such jurisdiction is an assertion that the defendant enjoys sovereign immunity, such "immunity is

4

akin to an affirmative defense, which the defendant bears the burden of demonstrating." *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014) (further explaining that "[i]n so concluding, we join every other court of appeals that has addressed the issue."). Under North Carolina law, governmental immunity is treated in essentially the same manner as sovereign immunity, differing to the extent that the latter applies to "the State" whereas the former applies to local governments. *See Meyer v. Walls*, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997).

Public official immunity is a "derivative form" of governmental immunity. *Cline v. James Bane Home Bldg., LLC*, 278 N.C. App. 12, 22, 862 S.E.2d 54, 62. Under North Carolina law, "[p]ublic official immunity is not a defense to intentional torts." *Mandsager v. Univ. of N. Carolina at Greensboro*, 269 F. Supp. 2d 662, 681 (M.D.N.C. 2003) (citing *Wells v. North Carolina Dept. of Correction,* 152 N.C.App. 307, 567 S.E.2d 803, 813 (2002)). Further, this immunity applies only where a public official is "engaged in the performance of their governmental duties involving the exercise of judgment and discretion, and acting within the scope of their authority"; the doctrine does not apply where such exercise was performed with malice or where corruption was involved. *Price v. Davis*, 132 N.C. App. 556, 562, 512 S.E.2d 783, 787 (1999).

Similarly, qualified immunity is an affirmative defense for which the burden of proof falls upon the party raising the defense. *See, e.g., Henry v. Purnell*, 501 F.3d 374, 378 (4th Cir. 2007); *Tanner v. Hardy*, 764 F.2d 1024, 1027 (4th Cir. 1985) ("It is a well established principle that qualified immunity … is a matter on which the burden of proof is allocated to the defendants.").

Legislative immunity is likewise an affirmative defense for which the burden of proof is upon the defendant. *See Front Royal & Warren Cnty. Indus. Park Corp. v. Town of Front Royal, Va.*, 865 F.2d 77, 78 (4th Cir. 1989).

As a threshold matter, Ms. Vandenberg's insinuation that Plaintiffs have the burden of overcoming her defenses of immunity in order to preserve subject matter jurisdiction is clearly untrue as a matter of law, per the cases cited above.

### B. Plaintiffs' claim for defamation is not barred by public official immunity because it is an intentional tort, and because Ms. Vandenberg was acting outside her official capacity, and with malice and/or corruption.

Next, Ms. Vandenberg asserts that public official immunity bars Plaintiffs' claim for defamation. ECF 25, p. 14. However, defamation is an intentional tort, and that defense is thus inappropriate in this case. *See Mandsager*, 269 F. Supp. 2d at 681. Further, Plaintiffs allege that Ms. Vandenberg's actions in causing the defamation of Plaintiffs—without yet visiting the merits of the allegations—clearly exceeded her official capacity, and involved maliciousness and corruption. Plaintiffs' Amended Complaint alleges in some detail that Ms. Vandenberg improperly involved herself in the affairs of a private homeowners' association to which she did not belong, ECF 14 at ¶¶ 66-68; pressured other municipal officials to expedite public records requests which would adversely affect Plaintiffs while also intentionally influencing the delay of records requests by Plaintiffs, *id.* at ¶¶ 40-47; intentionally played an instrumental role in causing a defamatory post to be made on social media, *id.* at ¶¶ 55-65, and more. These allegations, taken as true, allow this Court to reasonably infer that Ms. Vandenberg's actions were outside her official capacity and/or were undertaken with malice or corruption.

Ms. Vandenberg contends that because the defamation involved a "public record [which was] sent to [Ms. Vandenberg] in her capacity as mayor pro tempore," Ms. Vandenberg was acting within her official capacity in carrying out defamation. ECF 25, pp. 14-15. Firstly, it is

6

difficult to see how an intentional tort such as defamation in this instance could be considered part of a mayor pro tempore's official duties, even if public official immunity *could* apply to intentional torts—which it seemingly cannot. Secondly, even if receiving the "public record" was an official action, forwarding that document to her husband immediately thereafter clearly was not. As a result, Plaintiffs' claim for defamation is not barred by public official immunity.

### C. Ms. Vandenberg is not entitled to qualified immunity because the challenged actions which were undertaken in her official capacity violated a clearly established constitutional right.

Qualified immunity shields governmental officials, acting in their official capacities, from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "A court's qualified immunity analysis asks two questions: '(1) whether a statutory or constitutional violation occurred, and (2) whether the right was clearly established at the time of the violation.'" *Caraway v. City of Pineville*, 111 F.4th 369, 381 (4th Cir. 2024) (citations omitted). The first step in the analysis involved an assessment as to "whether the facts, taken in the light most favorable to the party asserting the injury, ... show the officer[s'] conduct violated a [federal] right." *Id.* (citations omitted).

Here, qualified immunity should be inapplicable to the extent that Plaintiffs specifically pleaded allegations which, taken in the light most favorable to Plaintiffs, show that Ms. Vandenberg was acting outside her official duties in intentionally injuring Plaintiffs. As to Plaintiffs' claims for which it is alleged that Ms. Vandenberg had acted at least to some extent in an official capacity, Plaintiffs sufficiently allege that Ms. Vandenberg carried out a litany of actions aimed at Plaintiffs in an effort to quell their exercise of free speech, thereby violating the First Amendment to the United States Constitution. Further, it cannot seriously be argued that the right to protest against a governmental official's actions, long recognized to be guaranteed by the

7

First Amendment, is a "clearly established" right of which Ms. Vandenberg ought to have been aware.

As a result of the foregoing, Ms. Vandenberg is not entitled to qualified immunity such that any of Plaintiffs' claims against her are barred.

### D. Ms. Vandenberg is not entitled to legislative immunity because her challenged actions were not undertaken in a legislative capacity.

Ms. Vandenberg next argues that Plaintiffs' claims are barred by legislative immunity because "the allegations all arise out of her legislative decisions."

Legislative immunity can act as a total bar to suit, but only where the actions challenged by the Plaintiff were undertaken "in the sphere of legitimate legislative activity." *See Bogan v. Scott-Harris*, 523 U.S. 44, 45 (1998). Further, "when municipal officials 'do more than adopt prospective, legislative-type rules and take the next step into the area of enforcement, they can claim only the executive qualified immunity appropriate to that activity'" and legislative immunity does not apply. *Front Royal*, 865 F.2d at 79 (citations omitted).

Merely alleging that an action was taken in relation to legitimate legislative functions does not suffice to confer this powerful immunity; "inasmuch as the complaint … alleges conduct beyond that necessary to perform their duties," a legislative body or their members are "subject to suit under §§ 1983 …." *Scott v. Greenville Cnty.*, 716 F.2d 1409, 1422 (4th Cir. 1983) (finding that members of city council did not act in their legislative capacity, but rather in an executive capacity, when intentionally causing the delay of consideration of a building permit). "If the underlying facts 'relate to particular individuals or situations' and the decision impacts specific individuals or 'singles out specifiable individuals,' the decision is administrative" and thus not protected by legislative immunity. *Alexander v. Holden*, 66 F.3d 62, 66 (4th Cir. 1995).

8

Here, Ms. Vandenberg argues that because her actions were catalyzed by the performance of a legislative function—that is, pursuing the Easement for the purposes of the Public Trail Project—the actions which are challenged here are in the sphere of legitimate legislative activity, and thus shielded by immunity. However, Plaintiffs are alleging that in carrying out a systematic effort to chill their freedom of speech, Ms. Vandenberg did far more than merely adopt prospective, legislative-type rules. The Complaint plainly alleges conduct beyond that necessary to perform Ms. Vandenberg's official duties. In describing how Ms. Vandenberg involved herself inappropriately in HOA issues for the purposes of protecting supporters of the Public Trail Project, and how Ms. Vandenberg intentionally caused Plaintiffs to be publicly defamed, and how she wielded her influence to cause Plaintiffs' public records requests to be delayed while expediting those of her supporters, Ms. Vandenberg was not acting in a legislative capacity; she was carrying out targeted actions which "relate to particular individuals" and the decision most directly and purposefully impacted specific individuals—Plaintiffs. Therefore, to the extent that the challenged acts were governmental at all, they were administrative, and legislative immunity thus is inapplicable in the case at bar.

### III.   Ms. Vandenberg's motion to dismiss Plaintiffs' defamation claim should be denied because Plaintiffs sufficiently pled that the Facebook Post was caused by Ms. Vandenberg, was factual and defamatory *per se*, and identified Plaintiffs.

In the Amended Complaint, Plaintiffs allege that Ms. Vandenberg intentionally caused to be published an anonymous Facebook Post on a local Facebook page accusing Plaintiffs of extortion (the "Facebook Post"). ECF 14, ¶¶ 54-65. Ms. Vandenberg argues firstly that (1) she cannot be held liable for defamation because without discovery, Plaintiffs cannot definitively ascertain who actually posted the defamatory statement online; (2) the statement at issue is either inactionable opinion or hyperbole; and (3) Ms. Comiskey cannot sue for defamation because she

9

was not identified in the defamatory statement, and thus the Facebook Post was not "of and concerning" Ms. Comiskey.

"In order to recover for defamation, a plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." *Boyce & Isley, PLLC v. Cooper*, 211 N.C. App. 469, 478, 710 S.E.2d 309, 317 (2011). "Under the well established common law of North Carolina, a libel *per se* is a publication by writing … which, when considered alone without innuendo, colloquium or explanatory circumstances: (1) charges that a person has committed an infamous crime; … or (4) otherwise tends to subject one to ridicule, contempt or disgrace." *Renwick v. News & Observer Pub. Co.*, 310 N.C. 312, 317, 312 S.E.2d 405, 408–09 (1984). When a statement constitutes defamation is *per se*, general damages to the subject's reputation are presumed and need not be alleged nor proven. *Eshelman v. Puma Biotechnology, Inc.*, 2 F.4th 276, 283 (4th Cir. 2021) (citing *Flake v. Greensboro News Co.*, 212 N.C. 780, 195 S.E. 55, 59 (1938)).

Pursuant to N.C. Gen. Stat. § 14-118.4, extortion is a Class F felony in North Carolina and is thus an infamous crime.

In North Carolina, where parties conspire or collude for the purpose of causing an act of defamation, each party can be held liable regardless as to which party actually published the statement. *See Boyce*, 211 N.C. App. 469, 710 S.E.2d 309. That is, a defendant may be held liable for defamation if they cause or assist another in the publication of a false and defamatory statement. Further, the fact that a particular plaintiff is not precisely named in the defamatory statement is not a bar to the claim if their identity can be readily ascertained. *See id.* at 481-482, 710 S.E.2d at 319-320.

10

For defamation to be actionable, the statement must be one of fact, and not merely opinion or rhetorical hyperbole. *Craven v. Cope*, 188 N.C. App. 814, 817, 656 S.E.2d 729, 732 (2008). "In determining whether a statement can be reasonably interpreted as stating actual facts about an individual, courts look to the circumstances in which the statement is made. Specifically, we consider whether the language used is loose, figurative, or hyperbolic language, as well as the general tenor of the article." *Id.*

Here, Ms. Vandenberg does not appear to dispute that if the Facebook Post constitutes a statement of fact rather than opinion, the allegation of extortion contained therein would be defamatory *per se*. In addition to extortion's status as an infamous crime, an accusation of extortion would undoubtedly tend to subject the accused to ridicule, contempt, or disgrace.

### A. Ms. Vandenberg can be held liable for defamation even if it turns out she did not directly publish the defamatory statement.

Secondly, as the law in North Carolina is that a defendant can be held liable for defamation if they intentionally caused a third party to publish the statement, Ms. Vandenberg's argument is misguided. In fact, Plaintiffs have attempted to discover the identity of the actual publisher of the Facebook Post, but their attempts have been repeatedly thwarted, including by those aligned with Defendants. Plaintiffs have good reason to believe that Defendants know who the publisher of the Facebook Post is, and that Defendants are refusing to provide that person's identity.

What is alleged is that Plaintiffs sent a settlement offer to VOM, Ms. Vandenberg quickly forwarded that document to her husband, and immediately thereafter, the Facebook Post, which included the settlement offer, was published anonymously online. Given the circumstances, it is by far the most likely explanation that Ms. Vandenberg, her husband, or both either directly published the Facebook Post, or directed someone else to do so. Between the time that the

11

settlement offer was sent to VOM and the time that the Facebook Post was published, it is unlikely that it was seen by anyone other than Ms. Vandenberg. Ms. Vandenberg herself admits that, short of a change of heart and tactics on the part of Defendants, "it may not be possible to determine" who actually published the Facebook Post "until discovery ensues." ECF 25, p. 8. This is an argument against the dismissal of Plaintiffs' claim, not for it.

### B. The Facebook Post presents a statement of fact which is capable of being proven true or false, and it is thus not an inactionable opinion.

Thirdly, the Facebook Post is entirely a statement of fact, and is neither opinion nor rhetorical hyperbole. Ms. Vandenberg argues that the Facebook Post "does not state facts about Plaintiffs," but merely criticizes Plaintiffs' actions. ECF 25, p. 9. This argument cannot bear weight; if a factual assertion about a person's "actions" does not constitute a statement about the person themselves, falsely claiming that "Mr. X murdered Mr. Y" would be inactionable— because it describes an "action," but falsely claiming that "Mr. X is a murderer" might be actionable. Ms. Vandenberg points to no authority which stands for the novel proposition that a false and defamatory statement about one's actions is not actionable defamation.

Relatedly, Ms. Vandenberg cites *Daniels v. Metro Magazine Holding Co., LLC*, 179 N.C. App. 533 (2006) for the proposition that if a statement "cannot reasonably be interpreted as stating facts about an individual," it is inactionable as for defamation. ECF 25, p. 9. Ms. Vandenberg then explains that courts have held statements accusing plaintiffs of being "dishonest" or "untruthful" are not actionable. *Id.* But there is a big difference between accusing someone of a personality trait, such as dishonesty or laziness, and accusing them explicitly of committing or attempting to commit a felony such as extortion. Specifically, the Facebook Post reads in part, "We would like to inform you about an individual attempting to use litigation to

extort money from the town ....” ECF 14-4. This statement does not subjectively describe a personality trait, but asserts as a matter of fact that a felony has been attempted.

Lastly on this front, Ms. Vandenberg claims that because the Facebook Post included snippets of the settlement offer which purportedly constituted attempted extortion, the otherwise factual statements in the Facebook Post are inactionable opinion. Ms. Vandenberg cites to *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 185 (4th Cir. 1998), for the proposition that “[w]hen “the bases for the ... conclusion are fully disclosed, no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related.” However, this is not the full rule on the matter, because context matters as to whether a statement should be considered defamation.

“Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, *or if his assessment of them is erroneous*, the statement may still imply a false assertion of fact.” *Lewis v. Rapp*, 220 N.C. App. 299, 307, 725 S.E.2d 597, 603–04 (2012) (citing *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18–19 (1990)) (emphasis added).

In *Milkovich*, the United States Supreme Court overturned the Ohio Supreme Court when the latter held that a statement much like that in the case at bar was inactionable “opinion.” Specifically, the *Milkovich* court provided that even an insinuation that a person committed a crime, despite the facts underlying the accusation being made readily available, may constitute actionable defamation. 497 U.S. at 21 (further explaining that “[w]e also think the connotation that petitioner committed perjury is sufficiently factual to be susceptible of being proved true or false” and is thus actionable). The *Milkovich* opinion went on to explain the importance of this approach, providing that “[t]he destruction that defamatory falsehood can bring is, to be sure, often beyond the capacity of the law to redeem. Yet, imperfect though it is, an action for

13

damages is the only hope for vindication or redress the law gives to a man whose reputation has been falsely dishonored." *Id.* at 22–23.

Here, like in *Milkovich*, the statement at issue involves an assertion that Plaintiffs committed or attempted to commit a crime, and the facts allegedly underlying that assertion were made available. But the ultimate question in determining whether the sort of "opinion privilege" which Ms. Vandenberg seeks to hide behind is applicable is whether the statement is sufficiently factual to be susceptible of being proved true or false, and here, it is. A crime could not be a crime if it were not capable of being proven true or false, at the very least, in a court of law. It would stand to follow, then, that at least as it relates to a plaintiff who is not a public figure, a blunt accusation of attempted felony cannot be shielded from defamation liability merely by including some "factual basis" which was taken and provided out of context.

### C.  The Facebook Post sufficiently identifies Ms. Comiskey so as to give her a cause of action for defamation.

Ms. Vandenberg next argues that Ms. Comiskey has no claim for defamation because "the Facebook post does not identify her in any capacity" and because the Facebook Post was "made in reference to an individual, not to the entire Comiskey family." ECF 25, p. 12.

"In order for defamatory words to be actionable, they must refer to some ascertained or ascertainable person and that person must be the plaintiff." *Arnold v. Sharpe*, 296 N.C. 533, 539, 251 S.E.2d 452, 456 (1979). While it is true that there can be no action for defamation where a larger group is defamed, or where only one anonymous individual in a larger group is targeted so as to make it impossible to ascertain the identity of the target, it is well established that where a defamatory statement refers to a smaller group of people, any member of the group may possesses a claim for defamation. *See, e.g., Boyce*, 153 N.C. App. at 33, 568 S.E.2d at 900 (2002) (holding that any member of a small law firm could sue for defamation when the

14

statement at issue referred to the entire firm); *Carter v. King,* 174 N.C. 549, 553, 94 S.E. 4, 6 (1917) (holding that one of the members of an eleven-member jury could maintain a cause of action for libel where the defamatory statement imputed misconduct to the entire group); *Taube v. Hooper*, 270 N.C. App. 604, 610, 840 S.E.2d 313, 318 (2020) (holding that a plaintiff may have a claim where the alleged statements "refer to some, most or all of the group").

Here, Ms. Vandenberg points to the words "an individual" and "[t]his person" in the Facebook Post to argue that only one unnamed individual in a group is targeted, and so neither is identified. However, the settlement offer which is included in the Facebook Post references "the Comiskey family" multiple times, which refers to Plaintiffs and their young children, likely the only ones with that surname in the community. While neither of Plaintiffs is specifically mentioned, since the Facebook Post was published on a local page, and since the reader would most certainly attribute the accusations to either of Mr. or Ms. Comiskey, or both, the defamatory statements in the Facebook Post clearly refer to and make readily ascertainable both Mr. and Ms. Comiskey.

As a result of the foregoing, Ms. Vandenberg's motion to dismiss Plaintiffs' defamation claim should be denied.

### IV. Plaintiffs have sufficiently pled a claim for intentional infliction of emotional distress.

Ms. Vandenberg asserts that Plaintiffs' claims for intentional infliction of emotional distress ("IIED") should be dismissed because (1) the allegations "involve an entity other than Ms. Vandenberg infringing upon Plaintiffs' rights; (2) "the actions alleged are neither extreme nor outrageous"; and (3) "there is no severe emotional distress present." ECF 25, p. 13.

"The elements for the tort of intentional infliction of emotional distress are: '1) extreme and outrageous conduct by the defendant 2) which is intended to cause and does in fact cause 3)

severe emotional distress.'" *Waddle v. Sparks,* 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (citation omitted). "Conduct is extreme and outrageous when it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Smith-Price v. Charter Behav. Health Sys.*, 164 N.C. App. 349, 354, 595 S.E.2d 778, 782 (2004) (citation omitted). A claim for IIED may also be available where "defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress." *Radcliffe v. Avenel Homeowners Ass'n, Inc.*, 248 N.C. App. 541, 560–61, 789 S.E.2d 893, 907 (2016). A series of otherwise-inactionable conduct, taken together, may become extreme and outrageous so as to constitute actionable IIED. *See, e.g., id.* at 566, 789 S.E.2d at 910; *Wilson v. Pearce*, 105 N.C. App. 107, 412 S.E.2d 148 (1992).

"Severe emotional distress" includes "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Clark v. Clark*, 280 N.C. App. 384, 395, 867 S.E.2d 743, 752 (2021) (citations omitted). "However, severe emotional distress does not require medical expert testimony." *Id.*

"The determination of whether the alleged conduct is considered extreme and outrageous is a question of law for the trial judge, however, the jury must determine whether the conduct is "sufficiently extreme and outrageous to result in liability." *Smith-Price*, 164 N.C. App. at 354-355, 595 S.E.2d at 783 (2004).

Here, Plaintiffs allege in their Amended Complaint, *inter alia*, that Ms. Vandenberg intentionally abused her position and influence as mayor pro tempore, even when acting outside

her official capacity, to stonewall Plaintiffs' public records requests, collude with Plaintiffs' own HOA and neighbors to act against Plaintiffs' property interests, cause the defamation *per se* of Plaintiffs on the internet by falsely accusing them of a felony, and subtly intimidate Plaintiffs using unwarranted police presence when Plaintiffs wished to voice opposition to Ms. Vandenberg's policies. *See, e.g.,* ECF 14, p. 10. Viewing the allegations in the light most favorable to Plaintiffs and with Plaintiffs' allegations taken as true, this Court can reasonably infer that Ms. Vandenberg misused the power and influence which she wields as mayor pro tempore in the local community to intentionally and systematically harass and intimidate Plaintiffs. Particularly given Ms. Vandenberg's position as one of the leaders of Plaintiffs' local community, the prolonged time period throughout which the alleged misconduct occurred, and the sheer number of different means by which Ms. Vandenberg is alleged to have made life hellish for Plaintiffs, this Court should find that Plaintiffs have plausibly alleged extreme and outrageous conduct.

Further, while it is true that Plaintiffs have suffered significant emotional distress due to Ms. Vandenberg's conduct, Plaintiffs need not specify the precise traumas and psychological harm which they have been experiencing due to such conduct at this stage of the litigation.

As a result of the foregoing, Ms. Vandenberg's motion to dismiss Plaintiffs' claim for intentional infliction of emotional distress should be denied.

**V.     Plaintiffs have sufficiently pled a claim for violations of the First Amendment.**

Ms. Vandenberg next argues that Plaintiffs' claims under the First Amendment of the United States Constitution should be dismissed because, in part, (1) Plaintiffs have failed to show "some adverse impact on the exercise of the plaintiff's constitutional rights"; (2) "[t]he First Amendment does not guarantee citizens the right to receive responses to their public records

17

requests" on a particular timeline; (3) governmental retaliation is justifiable "when legitimate countervailing governmental interests are sufficiently strong"; and (4) allowing Plaintiffs' claims to proceed would set a precedent which would encourage an excessive number of lawsuits. ECF 25, p. 16-19.

As to Ms. Vandenberg's general argument that this claim should be dismissed, Plaintiffs refer this Court to Plaintiffs' Memorandum of Law in Opposition to Defendant Village of Marvin's Motion to Dismiss, ECF 21, filed on May 9, 2025, and incorporate the arguments therein. Additionally, however, Ms. Vandenberg's arguments as summarized above are briefly responded to as follows.

### A. Whether governmental conduct would chill a person of ordinary firmness from exercising their constitutional rights is a question of fact for the jury.

"Because government retaliation tends to chill an individual's exercise of his First Amendment rights, public officials may not, as a general rule, respond to an individual's protected activity with conduct or speech even though that conduct or speech would otherwise be a lawful exercise of public authority." *The Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 415 (4th Cir. 2006). "The determination of whether government conduct or speech has a chilling effect or an adverse impact is an *objective* one—we determine whether a similarly situated person of "ordinary firmness" reasonably *would* be chilled by the government conduct in light of the circumstances presented in the particular case." *Id.* at 416 (4th Cir. 2006) (emphasis added). While the Fourth Circuit does not appear to have expressly answered the question, the courts in other circuits have held that whether governmental conduct would chill a person of ordinary firmness is a question of fact for the jury. *See, e.g., Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) ("Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness

from exercising his or her rights is a question of fact."); *Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir. 1999).

Ms. Vandenberg posits that Plaintiffs must, even at the pleadings stage, demonstrate actual harm to their ability to exercise their First Amendment rights, but this position has no basis in the law. Plaintiffs plausibly allege that the actions undertaken by Defendants, as detailed in the Amended Complaint, *would* tend to chill a person of ordinary firmness and as such are violative of the First Amendment. This objective test is one of fact, and is not for a court to summarily decide upon, so long as the allegations of the Complaint are sufficiently pled.

**B. Plaintiffs have not taken the position that they have a First Amendment right obtain to public records.**

Ms. Vandenberg argues that "[t]he First Amendment does not guarantee citizens the right to receive responses to their public records requests faster than others." ECF 25, p. 17. This point, insofar as it blatantly ignores the entire context of this case, is conceded. However, it is not alleged that the First Amendment was violated solely on the basis of violating Plaintiffs' statutory rights to obtain public records. It is instead alleged that intentionally and unlawfully influencing government employees to stonewall an unfriendly citizen's public records requests, when combined with the numerous other instances of abuses of governmental power in a targeted campaign against that citizen, as detailed in the Amended Complaint and herein, violates the First Amendment. As such, this argument by Ms. Vandenberg misses the mark.

**C. Plaintiffs' First Amendment rights outweigh Defendants' interests in publicly discrediting and intimidating Plaintiffs.**

Ms. Vandenberg also argues that governmental retaliation which otherwise violates the Constitution is justifiable "when legitimate countervailing governmental interests are sufficiently strong." ECF 25, p. 18. Ms. Vandenberg couches this argument as one pitting Plaintiffs' interests in "preventing a Public Trail from being built" against the government's interest in "ensuring

19

citizens receive information about crime." However, this claim is for violations of the First Amendment, so that phrasing of the issue is disingenuous; the issue is whether the local government's interest in having police appear at a community meeting for the purpose of discrediting Plaintiffs outweighs Plaintiffs' rights to exercise free speech as guaranteed by the First Amendment. Plaintiffs maintain that it does not.

> **D. Plaintiffs have sufficiently pled a unique and systematic pattern of misconduct so that no dangerous precedent would be set if their claims were to survive dismissal.**

Lastly, Ms. Vandenberg argues that allowing Plaintiffs' claims to proceed would set a precedent which would encourage an excessive number of lawsuits. ECF 25, pp. 18-19. Specifically, she opines that if Plaintiffs' claims are not dismissed, it "would result in citizens asserting First Amendment violations anytime a governmental entity disagreed with them." *Id.*

Plaintiffs have made clear that they allege a systematic series of conduct on the part of Defendants which—collectively—were calculated to and have the tendency to chill their First Amendment rights. Once again, Ms. Vandenberg attempts to isolate one single instance alleged by Plaintiffs' as part of that series of conduct in order to prove that that instance alone does not amount to a First Amendment violation. Even if it is true that each of the alleged instances of misconduct, which Plaintiffs have alleged to collectively amount to a First Amendment violation, were not enough individually to be unconstitutional, Plaintiffs maintain that the whole of the alleged instances combine to become unconstitutional conduct. As such, if this Court were to rule that Plaintiffs' claims should survive dismissal because they have sufficiently alleged a systematic pattern of misconduct which had the tendency to chill a person of ordinary firmness from exercising their rights, it would not likely lead to "dangerous precedent" encouraging people to sue the government any more often than they currently do.

**VI.** **Plaintiffs have sufficiently stated claims for statutory violations under North Carolina's Open Governance laws and for civil conspiracy.**

To the extent that Ms. Vandenberg adopts and incorporates the arguments initially made by VOM in VOM's motion to dismiss, ECF 17, Plaintiffs likewise refer to their arguments as presented in Plaintiffs' Memorandum of Law in Opposition to Defendant Village of Marvin's Motion to Dismiss, ECF 21, pertaining to Plaintiffs' claims for violations of North Carolina's open governance laws and for civil conspiracy, and incorporate those arguments herein. Plaintiffs maintain that the arguments contained in their previous Memorandum properly address these same issues.

## CONCLUSION

For the foregoing reasons, Ms. Vandenberg's Motion to Dismiss should be denied on all grounds.

Respectfully submitted,

This the 17th day of June, 2025.

TLG LAW

/s/ Benjamin J. Axelman
Benjamin J. Axelman
David G. Redding
2907 Providence Rd. #303
Charlotte, NC 28211
baxelman@tlg-law.com
dredding@tlg-law.com
*Attorneys for Plaintiffs*

21

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day electronically filed the foregoing

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT KIM**

**VANDENBERG'S MOTION TO DISMISS** with the Clerk of Court using the CM/ECF

system serving the same on all parties as follows:

> CRANFILL SUMNER LLP
> Jake W. Stewart
> P.O. Box 30787
> Charlotte, NC 28230
> Telephone (704) 332-8300
> Facsimile (704) 332-9994
> jstewart@cshlaw.com
> *Attorney for Defendants*

This the 17th day of June, 2025.

> **TLG Law**
>
> /s/ Benjamin J. Axelman
> _____
> Benjamin J. Axelman
> David G. Redding
> 2907 Providence Rd. #303
> Charlotte, NC 28211
> baxelman@tlg-law.com
> dredding@tlg-law.com
> *Attorneys for Plaintiffs*

22

## CERTIFICATION REGARDING USE OF ARTIFICIAL INTELLIGENCE

Pursuant to the June 18, 2024 Standing Order of this Court In Re: Use of Artificial Intelligence, 3:24-mc-104, counsel, by signing below, submits the following certification regarding **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT KIM VANDENBERG'S MOTION TO DISMISS**.

1. No artificial intelligence was employed in doing the research for the preparation of the Brief, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and

2. Every statement and every citation to an authority contained in the Brief has been checked by an attorney in this case as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 17th day of June, 2025.

**TLG LAW**

/s/ Benjamin J. Axelman

Benjamin J. Axelman
David G. Redding
2907 Providence Rd. #303
Charlotte, NC 28211
baxelman@tlg-law.com
dredding@tlg-law.com
*Attorneys for Plaintiffs*

23